# Garland *v.* Board of Revenue of Montgomery County.

*Bill in Equity for Injunction against County Board of Revenue, in matter of Erecting Public Bridge.*

1. *Constitutionality of statutes; rule of judicial construction.*—In adjudicating the constitutionality of a statute, it is the duty of the courts, in deference to the legislative department of the government, to so construe both the constitutional and the statutory provisions, if possible, that the statute may be upheld; but a constitutional provision, protective of the rights of persons and property, and remedial in its nature, is not to be construed so literally or strictly as to defeat the purposes for which it was intended; and a new provision, incorporated in a revised constitution, is to be construed in connection with the facts of public history, showing the causes in which it originated, and the mischief it was intended to remedy and prevent.

2. *Bridge across Alabama river between Montgomery and Autauga counties, for railroad purposes, wagons, and persons on foot; constitutionality of law authorizing.*—The act of the General Assembly, approved February 27th, 1889, authorizing the Boards of Revenue of Montgomery and Autauga counties to erect a bridge across the Alabama river near the city of Montgomery, making it a "free foot and wagon bridge, or a railroad bridge, or both combined," to issue county bonds to pay for it, and to levy a special tax to pay the annual interest on the bonds (Sess. Acts 1889, p. 756), so far as it authorizes the counties to build a bridge for railroad purposes, or a foot and wagon and railroad bridge combined, is violative of the constitutional provision which declares that no county, city or municipality shall "lend its credit, or grant public money or thing of value, in aid of or to any individual, association, or corporation" (Art. IV, § 55); and is also violative of the constitutional limitation (Art. XI, § 5) imposed on the taxing power of the counties.

APPEAL from the City Court of Montgomery, in equity.

Heard before the Hon. THOS. M. ARRINGTON.

The bill in this case was filed on the 19th June, 1889, by Alex. B. Garland, as a citizen and tax-payer of Montgomery county, against the Board of Revenue of said county, and the members thereof individually; and sought to enjoin and restrain the defendants from issuing county bonds, or doing any other acts in furtherance of the erection of a bridge across the Alabama river, as they had resolved to do under authority supposed to have been conferred on them by an act of the General Assembly, approved February 27th, 1889, which is quoted in the opinion of the court. There was a motion to dissolve the injunction, and to dismiss the bill for

[Garland v. Board of Revenue of Montgomery County.]

want of equity, which motion the court sustained; and this judgment and decree is here assigned as error.

GEO. F. MOORE, and JNO. GINDRAT WINTER, for appellant.

H. C. TOMPKINS, and A. A. WILEY, *contra.*

CLOPTON, J.—An act of the General Assembly, approved February 27, 1889, provides, "That the Boards of Revenue of the counties of Montgomery and Autauga be, and they are hereby, authorized and empowered to erect a bridge across the Alabama river, at or near the city of Montgomery; and are also authorized, within their discretion, to make said bridge either a free foot and wagon bridge for the travelling public, or a railroad bridge, or both combined;" and the Boards of Revenue are further severally authorized to issue bonds, not exceeding the sum of one hundred thousand dollars, for the purpose of paying for the bridge. Acts 1888–9, p. 756. Under the authority of this act, the Board of Revenue of Montgomery county, by resolution, authorized the issuance of bonds to the amount of sixty thousand dollars, to be sold at not less than their face value, and the proceeds to be solely used in the construction of a toll-bridge across the Alabama river, at or near the city of Montgomery, such bridge to be constructed as a foot and wagon bridge and railroad bridge combined. Appellant files the bill in the capacity of property-holder and tax-payer, and seeks to enjoin the issue of the bonds. The bill alleges, that the resolution providing for their issuance conforms in all respects to the requirements of the act. The right to maintain the injunction is based on the ground, that the act is in conflict with section 55 of Article IV of the Constitution, which declares: "The General Assembly shall have no power to authorize any county, city, town, or other subdivision of this State, to lend its credit, or to grant public money or thing of value, in aid of, or to any individual, association, or corporation whatever, or to become a stockholder in any such corporation or company, by issuing bonds or otherwise."

We are not unobservant of the rule, that in adjudicating the constitutionality of a statute, it should be so construed, if possible, as to bring it within the scope of the constitutional powers of the General Assembly. The presumption is, that the legislative department has not transgressed the limitations and inhibitions upon its powers. In deference

[Garland v. Board of Revenue of Montgomery County.]

to a co-ordinate department of the government, it is our judicial duty not to impute a violation of the organic law binding equally on every department; and in declaring upon the validity of a legislative enactment, to seek such a construction, if reasonable, as that the constitution and the statute can co-exist. But constitutional provisions, protective of the rights of persons and property, and remedial in their nature, are not to be construed so literally as to defeat the protection intended and provided. New provisions, incorporated in a revised constitution, are to be interpreted and given such operation as will accomplish the purposes for which they were introduced; and if, when so interpreted, a legislative enactment is not fairly susceptible of a construction consistent with such provisions, it becomes the plain, though delicate, duty of the court, to declare its invalidity.

With a view to comprehend the scope of the inhibitory provision of the Constitution under consideration, and to ascertain the purpose of its introduction, the causes in which it originated, and the mischiefs designed to be remedied, may be properly and helpfully considered. Under the constitutions preceding the present, the legislature had unlimited power over the subject. Several of the counties had, by legislative authority, subscribed for stock in railroad corporations, and issued bonds to pay for the same, in anticipation of their future public benefit. The disastrous consequences which ensued are common knowledge. . Either from mismanagement or fraud, insolvency of the companies, and failure to complete the roads, supervened, the stock became worthless, and the indebtedness exceeded the ability of the counties to pay. Expensive and protracted litigation was inaugurated; taxation became oppressive; legal proceedings to compel the levy of taxes were prosecuted by the bondholders; confiscation of the property of the citizens was impending, and the counties reduced to such condition as to be designated "the Strangulated Counties." To prevent a recurrence of such ruinous consequences to the governmental agencies, which had either transpired, or were clearly apparent at the time of the formation of the present constitution, the inhibitory provision was introduced. Its terms are comprehensive enough to include any aid, by issuing bonds or otherwise, by which a pecuniary liability is incurred, furnished by the municipalities named to private enterprises. In reference to a similar clause in the Constitution of Ohio, it was said in *Walker v. City of Cincinnati*, 21 Ohio St. 15:

15

"In no project originated by individuals, whether associated or otherwise, with a view to gain, are the municipalities named permitted to participate in such manner as to incur pecuniary liability. They can neither become stockholders, nor furnish money or credit for the benefit of the parties interested therein." Operation should be given to the provision in the constitution co-extensive with the evils to be prevented. A loan of credit, or grant of money or thing of value, *in aid* of an individual or corporation, in any mode, directly or indirectly, falls within its operation. A direct loan or grant to the individual or corporation is not essential. *Jarrett v. City of Moberly*, 5 Dillon, 253; s. c., 103 U. S. 580; *Wyscaver v. Atkinson*, 37 Ohio St. 80.

The act authorizes the Board of Revenue to issue bonds, and use the proceeds in the construction, within their discretion, of a free foot and wagon bridge for the travelling public, or a railroad bridge, or both combined. It is manifest that authority is conferred to erect a bridge, which may be exclusively a railroad bridge. It would seem from the terms of the act, that the primary and principal object was the erection of a railroad bridge, in whole or in part, and that the construction of a foot and wagon bridge is incidental. A railroad bridge, as such, is useless, unless it forms a part of a railroad. The counties having no power to construct a railroad, it was evidently contemplated that the bridge would be used and operated by some railroad company. The act being silent as to what use or disposition shall be made of the bridge, if erected as a railroad bridge, after it is completed, there is implied authority to permit its free use by individuals or a corporation operating a railroad. Power to lease it may be regarded, under the statute, a question of grave doubt; but, if conceded, the right to allow free use, and the right to lease, are of equal authority in the statute. There can be no question that the erection of a bridge by the issue of county bonds, and giving a railway company the right to control and use it free of charge, would be, in the meaning of the Constitution, a loan of credit in aid of such company. There is as little room for doubt, that constructing a railroad by the use of bonds of the county, and leasing it for a term of years to a railroad corporation, would be the grant of a thing of value in aid of such corporation. The legislature has equal power to authorize the municipalities named in the Constitution to erect manufactories, and issue bonds to pay for the same, for the purpose of leasing them

[Garland v. Board of Revenue of Montgomery County.]

to individuals or corporations, or repair shops for the purpose of leasing them to a railway company. All such methods are in aid of private enterprises, and constitute authority to indirectly accomplish that which, if done directly, would be a manifest infraction of the Constitution—a conversion of the municipalities into trading corporations.

The act further authorizes the levy of a special tax on the taxable property in the counties, to pay the semi-annual interest and the principal on the bonds. Independent of the constitutional provisions, there are limitations upon the taxing power, inherent in our system of government and political institutions. An essential limitation is, that no tax shall be levied for other than a public purpose.—*Loan Asso. v. Topeka*, 20 Wall. 655. There are express limitations in the Constitution upon the taxing power of the counties. Section 5 of Article XI declares: "No county shall be authorized to levy a larger rate of taxation, in any one year, on the value of the taxable property therein, than one-half of one per centum." The provisos in the section authorize an additional rate, to pay debts existing at the ratification of the Constitution, and special taxes for the erection of necessary buildings and bridges. A county can not levy a *special* tax for any purpose other than those expressed. The bridges referred to are bridges erected for use by the community, and under the control of the municipal authorities—constituting parts of the county highways. Though corporations, organized to build railroads, possess some characteristics of a public nature, such as the right of eminent domain, they are mainly private enterprises for purposes of gain. What we do affirm is, that a railroad bridge, to be used and operated by a corporation distinct from the county, does not come within the classes of bridges, for the erection of which the imposition of a special tax may be authorized under the Constitution.

We therefore hold, that those parts of the act which authorize the erection of a railroad bridge, or a foot and wagon and railroad bridge combined, are unconstitutional. We do not mean to intimate, that the legislature has no power to authorize the counties named in the act to erect a foot and wagon bridge across the Alabama river. Neither do we decide that the counties and a railroad company may not be authorized to erect jointly a foot and wagon and a railroad bridge combined, each paying their proportion of the cost, and owning separately and severally their respective interests

[Stevenson v. Anderson.]

in the property. This question is not presented by the record, and we leave it open. Other questions are presented in the argument, relating to the extent the act is invalid; but, as they are not raised by the record, it would be unbecoming to decide them.

Reversed, and judgment will be here rendered making the injunction permanent.

Reversed and rendered.