# CASES

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1899.

### Sheppard *v.* Dowling, Judge &c.

*Application for Mandamus.*

1. *Constitutionality of dispensary law; not violative of § 2, Article IV of the Constitution.*—The act entitled "An act to authorize municipal and other subdivisions of the State to buy and sell spirituous, vinous and malt liquors and to further regulate or prohibit the sale of such liquors," commonly known as the Dispensary Law (Acts of 1898-99, p. 108), and which in its body makes provision for the carrying on of the business of selling such liquors by towns, cities and counties, and prohibits the sale of liquors in the territory to which the act applies by others than the towns, cities and counties, and prescribes minute regulations for the sales by such municipal bodies, is not subject to the constitutional objection that its title embraces, and its body provides for, more than one subject, in violation of § 2, Article IV of the constitution; the title expressing and the act having but one subject, and all of its provisions being cognate and having reference to carrying into effect the single purpose expressed.

2. *Constitutional law; power of legislature when limited by constitutional provision.*—The power residing in the General Assembly of Alabama to pass laws regarding the rights, liberties and properties of the citizens of the State is inherent in said body, and not granted by the constitution of the State, or of the United States; but the Constitution of the State and the constitution of the United States, so far as they have any application, are only limitations upon that power, and apart from the limitations imposed by the organic law, State or Federal, the power of the legislature has no bounds.

3. *Constitutionality of dispensary law; not an interference with inter-state commerce.*—Section 10 of the Dispensary Law, which prohibits the sale of spiritous, vinous or malt liquors

in any county of the State in which a dispensary is authorized to be located, except as provided for in said act, and then further provides that "nothing in tnis act shall be so considered as to prevent any person who manufactures spiritous, vinous or malt liquors in a brewery or distillery from selling the same by wholesale in sealed packages, to dispensers or to liquor dealers, who may be otherwise authorized to sell such liquors," has reference solely to counties of the State in which dispensaries are authorized to be located, and neither the prohibition of the section nor the proviso has any reference to sales by distillers or brewers or dealers or other persons, made without the county; and, therefore, such section of the act does not, in any way, impinge upon the exclusive power of Congress to regulate interstate commerce, nor has it any application whatever to any phase of interstate commerce.

4. *Same; is not violative of the constitutional provision as to conferring additional powers.*—The Dispensary Law (Acts of 1898-99, p. 108), which confers additional powers upon municipal bodies in the State, and which is original in form, is not violative of § 2 of Article IV of the constitution, and is not subject to the objection that such act should have been in form amendatory of the charters of all the municipalities in the State, and t..at its title should have expressed a legislative purpose to amend said charter.

5. *Same; not violative of § 10, Article XIV of the Constitution.* The Dispensary Law is not violative of § 10, Article XIV of the constitution, which provides that "no law hereafter enacted shall create, renew or extend the charter of more than one corporation;" since conferring on towns, cities and counties the power to sell spiritous, vinous or malt liquors does not create, renew or extend the charters of such corporations within the meaning of the constitutional provision; and such provision has no application to municipalities, but only to private corporations.

6. *Same; not violative of § 5, Article XIV.*—The Dispensary Law is not in violation of § 5 of Article XIV of the constitution, which provides that "no corporation shall engage in any business other than that expressly authorized by its charter;" since such provision has reference only to private corporations.

7. *Same; same.*—A power conferred upon a corporation by an independent and original act, such as the power to buy and sell liquors, such as conferred by the Dispensary Law upon towns, cities and counties, is a power confered by its charter within the meaning of § 5, Article XIV. of the constitution, which provides that "no corporation shall engage in any business other than that expressly authorized by its charter."

[Sheppard v. Dowling, Judge, &c.]

8. *Same; no objection to the act that it did not originate in the House of Representatives.*—The Dispensary Law, (Acts of 1898-99, p. 108), is not an act for the raising of revenue within the meaning of § 31, Article IV of the constitution, which provides "that all bills for raising revenue shall originate in the House of Representatives;" and it is, therefore, no objection to the act that it did not originate in the House of Representatives.

9. *Same; sale of liquor as provided by dispensary law not the doing of business by the State in violation of § 54 of Article IV of the constitution.*—The Dispensary Law, which authorizes the carrying on of the business of selling spiritous, vinous and malt liquors by towns, cities and counties, is not the establishment of a private enterprise in which the State is interested in such sort as to be violative of § 54 of Article IV of the constitution; but the authority to engage in the business of selling spiritous, vinous or malt liquors was a power conferred by the General Assembly upon towns, cities and counties, which it was entirely competent for the General Assembly to do under the constitution, as an incident to the regulation of that traffic provided for oy said act.

10. *Same; does not impinge the right of pursuit of happiness by citizen.*—The General Assembly, having the right to prohibit entirely the sale of intoxicating liquors, may, by act passed for that purpose, prohibit its sale by individuals and private corporations, and commit the traffice exclusively as a mode of regulation to counties and towns as is done by the Dispensary Law, (Acts of 1898-99, p. 108), without violating any inalienable right of the pursuit of happiness, or other right by the individual citizen, and without impinging upon the rule against class and unequal legislation.

11. *Same; repeals all laws regulating or procuring the licensing and sale of liquors within the territory included in said act.* The general statute regulating the method of obtaining licenses for the sale of spiritous, vinous and malt liquors, (Code, § 3520) and the local laws prescribing the method of obtaining such licenses in different localities in the State, are not such laws as tend "to prohibit, retard, restrain or restrict the traffic in spirituous, vinous or malt liquors," which are, by §§ 13 and 15 of the act creating the Dispensary Law, expressly excluded from the repealing clause of said act; and, therefore, in a county where under such law a dispensary is established, a local law regulating the method of obtaining licenses for the sale of liquors therein is repealed, and it is unlawful to grant a license to an individual, although he had complied with the requirements of such local law as it existed prior to the time the Dispensary Law went into effect in such county.

APPEAL from the Circuit Court of Dale.

Tried before the Hon. A. A. EVANS.

On the 29th day of November, 1899, the appellant, W. M. Sheppard, filed in the office of the probate judge of Dale county, an application, in all respects as directed by law, for a license to sell liquors for the year 1900, at Pinckard, and this petition and recommendation remained on file in that office until January 1st, 1900, when appellant went before the appellee as probate judge of Dale county and tendered to him the requisite amount of money for license money, fees, etc., offered proof of the genuineness of the signatures on the recommendation, and that they were a majority of the legal electors and a majority of the *bona fide* householders who had resided within the corporate limits of Pinckard for twelve months next preceding the application. The appellee, as such probate judge, refused to enter upon a hearing of, or to determine the application, and rendered an order refusing to hear and determine the application; and based his refusal upon the passage and provisions of the Dispensary Law of Alabama, which, as stated in his order, he held to be the law governing the sale of whisky in Pinckard, and to repeal the local law for Pinckard, regulating the sale of liquor there. Upon this refusal appellant filed his petition for a *mandamus* addressed to Hon. A. A. Evans, judge of the third judicial circuit of Alabama, to require Judge Dowling to hear and determine the petition for the license. Judge Dowling waived the rule *nisi,* answered and consented that Judge Evans act finally upon the petition for *mandamus*. Judge Evans denied the petition and refused to grant the *mandamus* as prayed for. From this judgment refusing to grant the writ, the petitioner prosecutes this appeal. The *mandamus* is sought upon the grounds that the local law for Pinckard, passed by the General Assembly at the session of 1898-1899, is the law of force in Pinckard; and that the Dispensary Law, if valid, does not apply to Pinckard, because of the provisions of its thirteenth section, and also on the ground that the Dispensary Law is unconstitutional.

SOLLIE & KIRKLAND, for appellant.

A. T. BORDERS, *contra.*

McCLELLAN, C. J.—On this appeal are presented for consideration the constitutionality and the construction and operation of the act of February 18, 1899, (Acts of 1898-99, p. 108), commonly known as "The Dispensary Law." The title of the act is this: "To authorize municipal and other subdivisions of the State to buy and sell spirituous, vinous and malt liquors, and to further regulate or prohibit the sale of such liquors." In the body of the act provision is made for the carrying on of the business of selling such liquors by towns, cities and counties, and the sale of liquors in the territory to which the act applies by others than the towns, cities and counties is prohibited under severe penalties; and the act prescribes minute regulations of the sale by such municipal bodies. It is insisted for appellant that the title of the act embraces and that its body provides for two subject matters, viz., the sale of liquors by municipalities and the prohibition of its sale, in violation of § 2 of Art. IV of the constitution. This is hypercriticism. The act has but one subject; its purpose is single. It is simply to provide for the exclusive sale of liquors by municipalities. To do this it was necessary to empower them to engage in the business and to prohibit others to engage in it. That is all that is expressed in its title, and that is clearly expressed therein. And that is all that is provided for in the body of the act. What else is therein prescribed and provided is mere detail necessary to the carrying on of the business the municipalities are authorized to engage in. Of course, a town empowered to establish and conduct a dispensary of liquors must needs have a dispenser, and the provisions of the act for the appointment and prescribing the duties of dispensers are obviously cognate to and complementary of the subject expressed in the title; necessary to carrying out the purpose of the act, and hence covered by the expression of that purpose in the title. And, we know of no constitutional guarantee, or fundamental principle of government, or chart of liberty or

inalienable right that would be violated by the selection of a dispenser for a town who chanced to live beyond its corporate limits. Not only so, but as the dispensary, though carried on by a town, is for the country or county as well as the town, it would seem to be entirely appropriate for the county authorities to have the voice which is given them by the act in the selection of dispensers.

Much is said in argument for appellant to the general effect that though the establishment of dispensaries for the exclusive sale of liquors, as proposed by this act, may not be violative of the letter or spirit of any ordinance of the State or Federal constitutions, yet that those organic governmental charters "do not contain all the constitutional liberties and guaranties of the people, and that we have a vast reserve of such liberty not found in any written constitution, and which by the very nature of the case could not be put into any written constitution;" and that this act trenches upon this reserve of unexpounded and unformulated rights which the Legislature, though not inhibited therefrom by the organic law, is without power to interfere with. It will suffice in reply to all this to say that this court is thoroughly committed to the doctrine that the constitution of the State, and the constitution of the United States so far as it has any application, are not the sources of the legislative power residing in the General Assembly of Alabama, nor in any sense grants of power to the Legislature, but only limitations upon that power, and that apart from the limitations imposed by those fundamental charts of government, the power of the Legislature has no bounds and is as plenary as that of the British Parliament: All which the General Assembly is not forbidden to do by the organic law, State or Federal, it has full competency to do. And if there be any plausible objection to the soundness of this doctrine in any connection, it is surely unassailable in its application to the power of the Legislature to regulate the liquor traffic.

Another objection to this act stated by counsel for appellant, but not urged in argument, is that as a whole it is violative of the interstate commerce clause of the constitution of the United States. As counsel do not

deem this position worthy of discussion, we content ourselves with saying that it is without merit.

But counsel do insist in argument that the saving clause in § 10 of the act with respect to brewers and distillers is violative of the constitution of the United States. That section, so far as necessary to be here set out, is as follows: "No spirituous, vinous or malt liquors or intoxicating drinks shall be sold in any county of this State in which a dispensary is authorized to be located, except as herein provided. But nothing in this act shall be so construed as to prevent any person who manufactures spirituous, vinous or malt liquors in a brewery or distillery from selling the same by wholesale, in sealed packages, to dispensers, or to liquor dealers, who may be otherwise authorized to sell such liquors." It is contended that the effect of these provisions is to limit the right to sell liquors to dispensers and other authorized dealers to brewers and distillers, and to prohibit such sales by other persons wherever they may reside and carry on business, whether within the dispensary district, or without the district in the State, or beyond the State, and that in thus interdicting sales by persons and dealers of other States other than brewers and distillers to dispensers and authorized dealers in this State, this section of the act impinges upon the exclusive power of Congress to regulate interstate commerce. The position is rested upon an wholly unwarranted construction of the section in question. The section has reference solely to counties in the State in which dispensaries are authorized to be located. Its general purpose and effect is to prohibit the sale of liquors in such counties by all persons except dispensers, and the proviso authorizes sales in such counties by brewers and distillers to dispensers, whether of the county or not, and to persons other than dispensers who are authorized dealers in liquors. Neither the prohibition of the section, nor the proviso has any reference to sales by distillers, or brewers or dealers or other persons made without the county; and hence the section has no opeation at all upon sales made in other States to

persons—dealers, dispensers or what not—in the county. There is no room for saying that the section has any application whatever to any phase of interstate commerce.

If it be conceded, as counsel insist, that the prohibition of this § 10 is broader than the title of the act in that, while the purpose expressed in the title is to prohibit the sale of spirituous, vinous and malt liquors, the prohibitive provision in this section goes also to "intoxicating drinks," which may not be composed in any part of spirituous, vinous or malt liquors, and that, therefore, the prohibition of the sale of intoxicating drinks is unconstitutional and void, the concession would not avail the appellant. Upon it this particular provision not expressed in the title would fail, but all other provisions of the act would remain intact and valid; and it is upon the assumed invalidity of the act as to its other provisions, those relating to spirituous, vinous and malt liquors, that the alleged rights of the appellant are made to rest.

It is quite customary for the Legislature to confer additional powers even upon a single municipality by acts which are original in form, containing no reference to the existing charter; and there can be no question but that such an original act, if it contain but one subject which is clearly expressed in the title, complies strictly with § 2, Article IV of the constitution. Indeed, it is much to be doubted whether an act amendatory in form and expressing in its title merely a purpose to amend the charter of a municipal corporation can be said to comply with the constitutional provision in question at all when its purpose is to confer the power to buy and sell liquor, a power which is unusual in the charts of municipal life; and, at any rate, such an expression of the subject of this act as its title contains is obviously more in consonance with the purpose of the organic provision than any mere reference to municipal charters and expression of a purpose to amend them would be. The contention of appellant that this act should have been in form amendatory of the charters of all the municipalities in the State, and that its title should have expressed a legislative purpose to amend said charters is lacking in all semblance of merit.

It is contended further that this act is violative of that provision of § 10 of Article XIV of the Constitution, which is in these words: "No law hereafter enacted shall create, renew or extend the charter of more than one corporation." There are two sufficient answers to this position. In the first place, a law conferring upon municipal corporations the power to deal in liquors does not create, renew or extend the charters of such corporations. Such conferring of power is, of course, not the creation or renewal of municipal charters. And the other term of the provision, the prohibition of extension of more than one charter, has reference solely to time, and not at all to additional powers. And in the next place, the provision has no application to municipalities, but only to private corporations. These latter are sometimes chartered for specified periods, while the charters of the former are always perpetual.

And so in respect to § 5 of Article XIV: "No corporation shall engage in any business other than that expressly authorized in its charter." That, too, has reference to private corporations solely. But if it applied to municipal corporations, the result would be the same: A power conferred upon a corporation by an independent and original act, such as the power to buy and sell liquor conferred by this act, is a power conferred by its charter within the meaning of that section.

The act under consideration is not one "for raising revenue" within the meaning of § 31 of Article IV of the Constitution. Its purpose is to provide for the dispensing of liquors by municipalities under such conditions and limitations as make it in fact as it is in theory, a police regulation of the traffic. It was neither intended to raise revenue nor does it in fact raise revenue. It merely provides so far as it has reference to revenue at all that the towns which carry on dispensaries shall pay the license tax raised and imposed by the revenue laws of the State from other dealers in liquors. Hence, it is no objection to the act that it did not originate in the House of Representatives.—*Dunbar v. Frazer,* 78 Ala. 538.

It is insisted that this act provides for the carrying on of business of a private nature by counties and

towns, that these municipalities are mere political sub-
divisions of the State for governmental purposes, that
such business carried on directly by them is indirectly,
but none the less essentially, a private enterprise, in
which the State is interested, and that, of consequence,
the act is violative of § 54 of the fourth article of the
constitution which ordains, *inter alia*, that the State
shall not "be interested in any private or corporate en-
terprise." There is authority for this answer to the
position thus taken for appellant: That the purpose,
object and effect of the act is regulative of the liquor
traffic by putting it in the immediate control of men
who have no personal interest to be subserved by in-
creasing the volume of business, or by selling liquors of
an inferior and deleterious quality, etc., etc., that under
the police power the State has the undoubted right to
provide such regulations, and that the pecuniary interest
which the State is supposed to have in the business
through its subdivisions is a mere necessary incident to
the exercise of this undoubted power, and hence that the
business so carried on is a public governmental concern,
and not a private enterprise within the purview of the
organic provision in question.—*State v. Aiken*, 42 S. C.
222. But we place our decision of the point upon other
considerations: The framers of the constitution of Ala-
bama were careful to differentiate the State from muni-
cipal subdivisions, towns, cities and counties, in respect
of what is forbidden to be done by the State, considered
as a separate entity, on the one hand, and what the
General Assembly is inhibited to authorize such subdi-
visions to do on the other; and they embodied in the in-
strument two distinct provisions having reference sev-
erally to the State and its said municipalities, containing
respectively, the one, all the limitations intended to be
ordained in this connection upon the powers of the
State as such, and, the other, all the limitations intended
to be put upon the power of the Legislature in respect
to authorizing action by counties and towns. This is
the ordinance as to the State: Art. IV, § 54: "The State
shall not engage in works of internal improvement, nor
lend money or its credit in aid of such; nor shall the
State be interested in any private or corporate enter-

prise, or lend money or its credit to any individual, association, or corporation." And this as to the towns and counties: § 55: "The General Assembly shall have no power to authorize any county, town, or other subdivision of this State to lend its credit, or to grant public money or thing of value, in aid of, or to any individual, association, or corporation whatsoever, or to become a stockholder in any such corporation, association, or company, by issuing bonds or otherwise." There is a notable absence from this last ordinance of any inhibition upon the Legislature to authorize towns and counties to engage or be interested in private enterprises; and the intent of the members of the constitutional convention to leave the General Assembly a free hand in this connection in emphasized and made to stand out in bolder relief by the inclusion of such a provision in the immediately preceding section having reference solely to the State as an entity distinct from such subdivisions. And this intent is further borne out and sustained by reference to the history of the times just preceding the framing of this Constitution, and to the conditions then existing, from which it is clearly deducible that enterprises of the nature provided for in the act under consideration were not among the evils which the convention had in mind and purposed to provide against by this ordinance limiting legislative power in respect of authorizations to towns and counties.—*Garland v. Board of Revenue,* 87 Ala. 223. Hence, our conclusion that it was entirely competent for the General Assembly to authorize towns and counties to carry on the liquor traffic as an incident to the regulation of that traffic provided for by this act.

Pursuit of happiness is one of the citizen's inalienable rights. But the lines of such pursuit are not unlimited. A man's chief joy may be in the death of his enemy, yet the law does not allow his to pursue happiness in that direction. So his individual sense of bliss attained may result from carrying on the liquor traffic; but the law does not esteem that particular avocation, involving, as it does in the eye of the law, baneful consequences to society, so necessary to his happiness as that his right to pursue happiness along that line is guaranteed to him by the Declaration of Rights; and efforts toward the attainment of content may, without violence to or-

ganic guaranties, be confined entirely to other channels, or, if allowed to be exerted in this, be clogged and impeded by such regulations as the Legislature may deem necessary or conducive to the public good. And the General Assembly having the right to prohibit entirely the sale of intoxicating liquor, may prohibit its sale by all individuals and private corporations, and commit the traffic exclusively as a mode of regulation to counties and towns, without violating any inalienable or other right of the individual, and without impinging upon the rule against class and unequal legislation.

Section 13 of the act is as follows: "This act shall not be construed to repeal any law, local or general, that tends to prohibit, retard, restrain or restrict the traffic in spirituous, vinous or malt liquors, or intoxicating drinks of any kind." And § 15 provides that "all laws and parts of laws that conflict with the provisions of this act, except those referred to in the thirteenth section of this act, are hereby repealed." It is contended that under these provisions this act cannot apply to the town of Pinckard, in which appellant proposes to engage in the liquor traffic, because at the time of the passage of this act there was a local law in force in and upon said town which "tended to prohibit, retard, restrain or restrict the traffic in spirituous, vinous or malt liquors," and which was not repealed by this act. The local law referred to did not prohibit the sale of liquors in Pinckard; but it provided that before license should be issued to engage in the liquor business there the applicant therefor should file in the office of the judge of probate "a written recommendation of a majority of the legal electors and a majority of the *bona fide* householders who have resided in the corporate limits of said town of Pinckard twelve months next preceding such application, stating that they are acquainted with the person or persons to whom such license is to be issued, that such person or persons are possessed of good moral character and in all respects are proper and suitable persons to be licensed to sell malt or spirituous liquors, or other intoxicating drinks, within the corporate limits of said town." If this local act "tends to prohibit, retard, restrain, or restrict" the liquor traffic within the meaning

of § 13 of the Dispensary act, in the same way the gen-
eral law, which imposes heavy taxes upon liquor dealers
and requires that before a license to retail shall be
granted the applicant must produce to the judge of pro-
bate "a recommendation in writing, signed by twenty
respectable householders and freeholders residing with-
in the corporate limits of the town, city or precinct, in
which he proposes to engage in the business of retailing,
stating that they are acquainted with him, that he is of
good moral character, and is in all respects a proper per-
son to be licensed," and providing further that "if there
be not within the precinct twenty resident householders
and freeholders, the recommendation must be signed by
a majority of the householders and freeholders residing
therein," tends to prohibit, retard, restrain or restrict
such traffic: the difference between the local statute
applying to Pinckard and this general law in the respect
under consideration is obviously a difference of degree
merely and not of kind; and if the local law is saved
from repeal by § 13 of the statute involved in this case,
so also is the general law.   And if this be true, it is
manifest at once that the statute is left without any
field of operation and is utterly emasculated.    These
considerations lead us to the conclusion—since of course
it was the legislative intent to give the act some potency
and operation, since it is our plain duty to find some
field for its operation, and since effect may be given to
§ 13 short of holding the law-making power to have stul-
tified itself— that it was not the legislative purpose to
save either the general law applicable to the whole
State or the special law obtaining in the town of Pinck-
ard, each having reference, it is to be noted, only to the
certification of the fitness of the applicant for license to
engage in the liquor business, from the general repeal-
ing clause embodied in § 15 of this act, or to provide that
this act should not apply to localities in which thereto-
fore licenses to engage in this business were issuable
upon a certain prescribed recommendation of the appli-
cant's moral character and fitness to carry it on.
Whether this dispensary law is a wise and judicious
exercise of the legislative power is no concern of the
courts, and we have neither the right nor the inclination
to so construe its several provisions as that they will be

destructive of each other and of the statute as a whole; but discharging the duty which is upon us to so construe what the General Assembly has written down as to give effect to all they have said, we hold that whatever may be the effect of § 13 of the act, it has no operation in respect of such special laws as that which formerly obtained in the town of Pinckard, nor in respect of the general provisions embodied in § 3520 of the Code.

We have considered all the points urged in argument against the validity of the statute in question and against its application to the town of Pinckard; and we concur in the judgment of the circuit court that the act is constitutional and valid, and that it is of force in respect of the liquor traffic in the town of Pinckard; and the judgment of that court must be affirmed.

Affirmed.