# Southern Ry. Co. *v.* Hartshorne.

## *Creditor's Bill.*

(Decided May 24, 1909.   Rehearing denied June 30, 1909.
50 South. 139.)

*Municipal Corporation; Aid to Railroads; Constitutional Restriction.*—Under section 94, Constitution 1901, a city cannot purchase land with public funds and have the same conveyed to a railroad in consideration of the railroad company's constructing and maintaining thereon a proper depot and station facilities.

APPEAL from Morgan Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by Acton C. Hartshorne against the city of Decatur and the Southern Railway, to subject certain property to his claim against the city alleged to have been purchased with funds of the city, and conveyed to the Southern Railway Company for terminal facilities. Decree for complainant and respondent appeals. Affirmed.

HUMES & SPEAKE, for appellant.   The adoption of section 94 did not render the power theretofore exercised by the legislature nugatory.—1 Dillon on Mun. Corp. 141.; 31 Pa. St. 515; 7 Col. 475.   The charter gave the city the right to make the donation.—Acts 1890-91, sec. 1, p. 304; *Ex parte Selma & Gulf Ry. Co.,* 45 Ala. 696; 16 Wall. 667; Id. 678.   A judgment creditor against a municipality has a remedy by mandamus to compel the levy of a tax to pay the same, or the issuance of bonds. —*Graham v. City of Tuscumbia,* 42 South. 400; *May v. Hurt,* 140 Ala. 394; *White v. Mayor of Decatur,* 119 Ala. 476; 106 Fed. 459; Dillion's Mun. Corp. secs. 576-578 and 850.   Provisions against granting aid to corporations do not, of course, affect the power of munici-

[Southern Railway Co. v. Hartshorne.]

palities to contract with corporations and to pay for benefits received.—73 Hun. 46; 162 Pa. St. 123; 20 A. & E. Ency. of Law, 1091.

JOHN C. EYSTER, and TENNIS TIDWELL, for appellee. The statutes require a railroad to establish and maintain sufficient depot accommodations. The doing of that which a party is bound in law to do will not support a conveyance, as it does not afford any consideration or an adequate consideration.—6 A. & E. Ency. of Law, 750; *Cobb v. Cowdry,* 94 Am. Dec. 374. The undertaking or agreement on the part of the municipality of Decatur was in violation of section 94, Constitution 1901.—*Garland v. Board of Revenue,* 87 Ala. 226; *Hayes v. Holly Springs,* 114 U. S. 120; 118 Cal. 524. The contract being void, it was illegal.—*Williamson v. Evans,* 87 Ala. 725; 15 A. & E. Ency. of Evi. 937. On these authorities, and those following, the contract was against public policy of the state.—22 N. Y. 258.

McCLELLAN, J.—Reference to the report of the previous appeal of this cause (150 Ala. 217, 43 South. 583, 124 Am. St. Rep. 68) will afford a satisfactory summary of the facts involved, the theories of the bill for relief, and the ruling of this court in affirmance of the decree below overruling demurrer to the bill and motion to dismiss the bill for want of equity. In due order cause proceeded to decree on the merits; the chancellor granting in full the relief sought in the premises. As a matter of fact it was correctly found by the chancellor that the real estate in question was conveyed by the Couch heirs to the appellant for a consideration afforded by the diversion of a part of the public revenue of the city of Decatur. The appellant takes the point, and urges as a ground for the denial of the relief prayed

by these judgment creditors of the municipality, that
a sufficient consideration for the contract between ap-
pellant and the municipal authorities, and for the con-
veyance to it by the Couch heirs—a consideration mov-
ing from the appellant to the city—existed in the fact
that the construction of a proper depot and station
facilities by the appellant would and did result in appre-
ciable benefit to the city of Decatur and its inhabitants.
Testimony was offered in support of this contention;
but the court disallowed it, thereby affording bases for
several of the assignments of error.

There can be no possible merit in this insistence.
The Constitution of 1875 and that of 1901, by section
55 of article 4 and section 94, respectively, provided
that the lawmaking branch "shall not have the power
to authorize any county, city, town, or other subdivision
of this state to lend its credit, or to grant public money,
or thing of value in and of or to any individual, asso-
ciation or corporation whatever, or to become a stock-
holder in any such corporation, association or company,
by issuing bonds or otherwise." The comprehensive-
ness of these provisions of the organic laws and the
wholesome reason for their incorporation into them are
stated in *Garland v. Board of Revenue*, 87 Ala. 227, 6
South. 402. Brief quotations from the opinion in that
case will demonstrate the correctness of the stated con-
clusion on this point below and of the affirmance of it
here. In describing the conditions suggesting the pro-
hibitions of section 55 it was said: "Several of the
counties had, by legislative authority, subscribed for
stock in railroad corporations, and issued bonds to pay
for the same, in *anticipation of the future public bene-
fit.*" (Italics supplied.) And, having described the
conditions that came to be a mischief of sufficient im-
portance to command treatment in a Constitution, this
court said: "Its (section 55) terms are comprehensive

enough to include any aid, by issuing bonds or otherwise, by which pecuniary liability is incurred furnished by the municipalities named to private enterprises." Not content with that broad statement, the opinion appropriates the language of the Ohio court dealing with a similar clause in the Constitution of that state: "In no project originated by individuals, whether associated or otherwise, with a view to gain, are the municipalities permitted to participate in such manner as to incur pecuniary liability. They can neither become stockholders, nor furnish money or credit for the benefit of the parties interested therein." Proceeding, this court said: "Operation should be given to the provision in the Constitution coextensive with evils to be prevented."

This section (55) has, as stated, become section 94 of the Constitution of 1901, and hence is impressed in meaning and effect with the construction put upon it in Garland's Case. In the light of that decision we need hardly add that the very motive leading to the creation of the conditions to prevent the recurrence of which the provision was written was anticipated public benefits. If the public benefits were held to be sufficient to take the act without the prohibition, then its ordaining in two Constitutions in this state was wholly vain. In the *Garland Case* a pecuniary liability was attempted to be incurred. The same reason that forbade that course of procedure to aid private enterprises is present to condemn the diversion of public revenue in this instance. The provision is no more explicit against becoming a stockholder or affording credit by the issuance of bonds than it is that money shall not be granted. In all enterprises like railroads, canals, pikes, manufacturing establishment, etc., benefits naturally accrue to the community concerned, and it is common experience that this is true. Because it is true the trustees of gov-

[Southern Railway Co. v. Hartshorne.]

ernment are and have always been amenable to it as an influence to induce the lending of the credit or granting the funds or property of the subordinate governments to the aid of such enterprises as foreshadow public benefits. This disposition, natural and inevitable of gratification if not restrained, cannot be gratified by those who have control. The very existence of this disposition has resulted in the creating of the prohibition. To permit it to yet prevail is to annul one of the wisest of the Constitution's provisions.

Some argument has been addressed to the proposition that prior to the Constitution of 1875 the charter of Decatur permitted such grants as was here attempted, and that in re-enacting or amending that or succeeding charters the power was not impaired. The argument is unsound. It involves the maintenance of the proposition that provisions in statutes in conflict with the Constitution of 1875, and the same is true of the later instrument, not within the exceptions provided by the schedule, were not stricken down by the Constitution. That, of course, is not true. Sections 55 and 94 are self-acting—prohibitory in nature and effect. They bound, and bind, in order, all departments of the state, and no law could, did, or does exist in contravention of their prohibitions.

Under this ruling the price paid Couch's heirs for the lot was a donation, pure and simple. The complainants, judgment creditors of the city of Decatur, were entitled to subject the property to the satisfaction of their demand, as was ruled on former appeal. The chancellor so adjudged, after properly eliminating the illegal testimony proffered in the cause. His decree is without error, and is therefore affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.