(130 So. 190)

## GRIFFIN v. JEFFERS et al., Board of Revenue of Etowah County.

### 7 Div. 957.

Supreme Court of Alabama.

June 19, 1930.

Rehearing Denied Oct. 23, 1930.

H. T. Bailey, and Motley & Motley, all of Gadsden, for appellant.

W. T. Murphree, of Gadsden, and R. B. Evins, of Birmingham, for appellees.

BROWN, J.

This bill is filed by a resident taxpayer against the county of Etowah and its board of revenue, and seeks to enjoin performance by the county of a contract entered into by it, acting by and through the board of revenue and C. H. Kershaw, by which the county engaged to lease and operate a toll bridge, for a term of thirty years, to be constructed by Kershaw or his assigns, across the Coosa river at Gilbert's ferry in said county.

At the time of entering into and approving the contract, and as a part of the same resolution, the board of revenue granted to Kershaw a franchise and license to construct and operate said toll bridge.

One of the grounds upon which the complainant seeks to enjoin the contract and have it declared void is that it violates the public policy of this state as declared in section 94 of the Constitution of 1901, in that the county of Etowah through and by said contract undertakes to lend its credit in aid of or to an individual or corporation in a scheme to construct a privately owned toll bridge.

The averments of the bill show that the estimated cost of the bridge is $138,000, and by the contract, to state its general effect, the county leases the bridge before it is constructed, and engages to operate it for a term of thirty years, paying, as a part of the annual rent therefor, $9,600 in monthly installments, this sum being referred to and treated in a subsequent stipulation of the contract as interest on the investment.

By another stipulation the county agrees to pay out of the proceeds of the tolls collected for the use of the bridge, an additional sum of $4,600 per annum as rent, with further provisions that, if the funds accruing from the tolls are not sufficient to pay said additional rent, the same shall be allowed to accumulate and draw 6 per cent. interest per annum.

By another stipulation in the contract the county agrees to pay as rent an additional amount equal to all taxes, state, county, municipal, school, or district, and to pay this on demand. The county also assumes the obligation to maintain and keep the bridge in repair, and to pay and hold the lessor harmless from all damage that may arise from the use of the bridge.

In addition to the several amounts as rent for the use of the bridge, the county agrees to keep the bridge insured and pay the premiums thereon, the insurance to be payable to the lessor or his assigns or mortgagees, as their interest may appear.

As appears from the allegations of the bill and a copy of the contract, which is made an exhibit thereto, it was clearly within the contemplation of the parties and their controlling purpose that the lease should be so assigned that the obligations and undertakings of the county would stand as security for money obtained to construct the bridge.

The contract stipulates:

"That the lessor shall have the right to transfer all rights under this indenture to a corporation, and upon assignment of his rights hereunder to a corporation and the giving of written notice of such assignment to the lessee, delivered to the Chairman of the Board of Revenue and Road Commissioners of Etowah County, Alabama, executed by the lessee, such corporation shall be deemed to succeed to all rights and liabilities of the lessor under this indenture, but the lessor shall, if so required by the lessee, be deemed a guarantor of the performance of the obligations of this indenture by such corporation. The rights hereunder shall also be assignable by any such corporation. In the event of such assignment, all references in this indenture to the lessor shall be construed to refer to such corporations.

"It is agreed that the lessor, or any assignee of the lessor, shall have the right to assign all or any part of the rights under this indenture as security for bonds, debentures and/or other securities, and that notice of such assignment delivered to the Chairman of the Board of Revenue and Road Commissioners of Etowah County, Alabama, in writing, shall constitute sufficient notice thereof to the lessee. Such assignment may provide that, subject to certain conditions, the assignee shall have the right to (a) receive all payments to be made by the lessee under the terms of this indenture, (b) in its name or in the name of the lessor to enforce all of the undertakings and obligations of the lessee, and/or (c) to succeed to all of the rights and privileges of the lessor hereunder; and the lessee shall be authorized, upon the occurrence of the conditions specified in any such notice, to make all such payments to any such assignee."

The contract further stipulates that:

"For the performance of all the undertakings and obligations of the Lessee herein contained the full faith and credit of the Lessee is hereby pledged, and the Lessee agrees hereafter to take, adopt or initiate such steps or procedure and to do or cause to be done all such acts as may be necessary in order to enable it to comply with all of the undertakings and obligations hereby imposed upon it, and agrees to cooperate with the Lessor in securing the approval of all such public officials which may be requisite in connection

with the performance by the Lessor under this indenture, and to grant, from time to time, to the Lessor all property, rights, permits, franchises and/or easements within its power to grant to enable the lessor to carry out his undertakings hereunder or to enable him to operate the bridge upon the termination, for any cause of the right of the Lessor to the possession of the bridge.

"Any of the rights hereunder may be enforced by the Lessor or by any assigns or pledges of this indenture by mandamus, but, this provision shall not limit the rights or remedies which may exist either at law or in equity.

"The provisions hereof run in favor of and bind not only the parties hereto, but also their respective heirs, personal representatives, successors and assigns."

■ The provisions of section 94 of the Constitution are that: "The legislature shall not have power to authorize any county, city, town, or other subdivision of this state *to lend its credit*, or to grant public money or thing of value in aid of, or *to any individual, association, or corporation whatsoever*, or to become a stockholder in any such corporation, association, or company, by issuing bonds *or otherwise.*" (Italics supplied.)

While this section of the Constitution is primarily a limitation on the power of the Legislature, it has in contemplation the power of the named governmental agencies to contract, and evidences the public policy of this state—that counties, cities, towns, and other subdivisions of the state, armed with the power of levying taxes on private property for governmental purposes, shall not lend their credit to any individual, association, or corporation whatsoever, by issuing bonds *or otherwise.* Garland v. Board of Revenue of Montgomery County, 87 Ala. 223, 6 So. 402; Couch v. Hutchinson et al., 2 Ala. App. 444, 57 So. 75; 6 R. C. L. 709, § 117.

The provisions in the Constitution of 1875, § 55 of article 4, were that: "The general assembly shall have no power to authorize any county, city, town, or other subdivision of this state, *to lend its credit*, or to grant public money or thing of value, *in aid of, or to any individual, association, or corporation whatsoever*, or to become a stockholder in any such corporation, association, or company, by issuing bonds, *or otherwise.*" (Italics supplied.)

Construing and applying this section of the Constitution of 1875, this court, in Garland v. Board of Revenue of Montgomery County, 87 Ala. 223, 6 So. 402, 403, observed: "Its terms are comprehensive enough to include any aid, by issuing bonds or otherwise, by which a pecuniary liability is incurred, furnished by the municipalities named to private enterprises. In reference to a similar clause in the constitution of Ohio it was said in Walker v. City of Cincinnati, 21 Ohio St. 15 [8 Am. Rep. 24]: 'In no project originated by individuals, whether associated or otherwise, with a view to gain, are the municipalities named permitted to participate in such manner as to incur pecuniary liability. They can neither become stockholders, nor furnish money or credit for the benefit of the parties interested therein.' Operation should be given to the provision in the constitution co-extensive with the evils to be prevented. A loan of credit, or grant of money or thing of value in aid of an individual or corporation, in any mode, directly or indirectly, falls within its operation. A direct loan or grant to the individual or corporation is not essential."

■■ While sections 6442 and 6443 of the Code confer authority and jurisdiction on courts of county commissioners and boards of revenue of the several counties "to purchase or establish toll bridges, free bridges, causeways and ferries," etc., and section 6759 authorizes such courts and boards to "take over, by lease or otherwise, the operation of bridges over navigable or other streams," and to "maintain the same as public highways," etc., these statutes contemplate that the power so conferred shall be exercised by the counties in their own names and rights, without entangling alliances with individuals or private corporations. Sheppard v. Dowling, Judge, etc., 127 Ala. 1, 28 So. 791, 85 Am. St. Rep. 68. To construe these statutes as authorizing the contract here involved—clearly a loan of the county's credit to aid Kershaw and his associates to construct a privately owned toll bridge—would render them violative of the Constitution. Garland v. Board of Revenue of Montgomery County, supra.

To state the proposition in different form, the contract is not only not authorized by the statutes, but is one which the Legislature had no power to authorize, and is clearly without the power of the county board to make.

We note that Kershaw is not a party to the suit, yet the effect of his absence is not presented on this appeal. Baisden v. City of Greenville, 215 Ala. 512, 111 So. 2; Hall v. Holly, 220 Ala. 597, 127 So. 164.

The foregoing is sufficient to indicate that we are of opinion that the demurrer to the bill was not well taken, and that the court erred in sustaining it. For this error the decree is reversed.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.