(136 So. 727)

**STONE, County Treasurer, v. STATE ex rel. MOBILE BROADCASTING COR- PORATION.**

I Div. 672.

· Supreme Court of Alabama.

June 18, 1931.

Rehearing Denied Oct. 15, 1931.

Gordon, Edington & Leigh, of Mobile, for appellant.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, for appellee.

**BROWN, J.**

The appeal in this case is from the judgment of the circuit court granting a peremptory writ of mandamus, commanding the appellant, as county treasurer of Mobile county, to register as a claim against the general funds of the county of Mobile, a warrant for $375 issued on May 14, 1930, by A. B. Davis, as president of the board of revenue and road commissioners of Mobile county, payable to the Mobile Broadcasting Corporation, "For account of advertising as per contract three fourths of a month at $500.00 per month."

The warrant was issued in pursuance of an order of the board of revenue and road commissioners of Mobile county, entered on the minutes of the board on March 17, 1930, that, "Claim No. 210, Mobile Broadcasting Corporation advertising as per contract, $375.-00," along with other miscellaneous claims, "are hereby passed to payment when properly O. K.'d by their respective Chairmen."

The petition for mandamus alleges, in substance, that at a meeting of the board of revenue and road commissioners of Mobile county, held on the 9th day of December, 1929, representatives of the Mobile Broadcasting Corporation appeared before said board and advised the said board that the Federal Radio Commission had granted a permit for a broadcasting station in Mobile, with the call letters "WODX," such station "to be on the air" by February 7, 1930, and Mobile county was requested to appropriate $500 per month as financial aid toward the advertising of Mobile county. After some discussion, which was joined in by several of the members of the board of revenue and road commissioners of Mobile county, Ala., a motion was made that the board's attorney " * * * draw up a contract with the Mobile Broadcasting Corporation for $500.00 per month, to be used for advertising the resources and developments of Mobile County over the Mobile Radio Broadcasting Station, provided the station was attractive, such contract to be for four years, with a clause for a six months' notice

for cancellation included, the said motion further authorizing Chairman A. D. Davis of the said board to sign the said contract"; that in pursuance of said resolution the contract was drawn and signed, on the 12th day of December, 1929; that said broadcasting station was thereafter established and "went on the air on February 7, 1930"; that the petitioner has complied with said contract, and that from time to time members of the board of revenue and road commissioners of Mobile county have broadcast over the said station such information as they desired to send out as provided for in said contract; that after said broadcasting station "had gone on the air" the representative of the petitioner appeared before the board of revenue and road commissioners, at a meeting of said board on February 17, 1930, "and stated that in view of the fact that the undersigned had fulfilled every promise which had been made to the said Board in opening a broadcasting station and putting Mobile on the air, they felt that they were now due some expression of confidence. The said Board of Revenue and Road Commissioners then adopted the following resolution:

" 'That in this day of wonders and achievements of science follow with bewildering frequency, and while comparisons are venturesome, surely the radio is worthy to stand in the forefront. It carries to the remotest parts of the earth, the news of the day and brings to the fireside music and mirth, entertainment and instruction most varied, I think we are to be congratulated on the auspicious beginning of WODX.'

"The Chairman of the Board then stated to the meeting, in substance, that he did not feel that the Board had ever received greater returns from any money expended by it than that received *from the funds appropriated to the radio station.*" (Italics supplied.)

That the petitioner's claim was duly audited and allowed, the warrant issued and presented to the treasurer for registration, and he refused to register the same "because he claimed that under the Constitution and laws of Alabama the petitioner is not entitled to collect the said warrant from the county."

That the refusal of the treasurer to register said claim, as authorized by subsection 4 of section 303 of the Code of 1923, was wrongful.

█ The contract, which is made an exhibit to the petition, recites, that: "(1) A controlling feature in the consideration for this contract is the representation that the party of the second part (the broadcasting corporation) will establish a high-class plant, costing approximately fifty thousand ($50,000.00) dollars, with an authorized power of five hundred watts, in the beginning, which it agrees to increase to one thousand watts as soon as authority therefor is obtained from the proper

authority. (2) That it will maintain a continuous service, minimum of six hours daily, except so much of that period as shall be allowed to a station contemplated at Montgomery, Alabama. (3) That during the hours of broadcasting, whenever the name of the station is announced, there shall be coupled with it, suitable expressions, setting forth the advantages to be found here, which phrases shall be varied from time to time, when and as suggested by the Board of Revenue and Road Commissioners of Mobile County. (4) That representatives of this Board may at suitable times, broadcast over such station, such information concerning the resources and opportunities in this County, provided that such remarks will not be extended over a period longer than ten minutes. (5) The party of the second part agrees to send out attractive programs, such as are calculated to cause the owners of radio sets throughout the country to desire to tune in on this station, thereby securing wide dissemination of information concerning Mobile County, thereby set out," etc.

The respondent in answer to the petition, among other defenses, asserts that the contract as embraced in said petition was not executed for the bona fide purposes of advertising the resources of Mobile county, but was entered into for the purpose of lending the financial aid of Mobile county to the relator in the establishment of a broadcasting station, and was without the authority of the county board.

The evidence shows without dispute that on December 9, 1929, the date on which the resolution of the board of revenue and road commissioners was adopted, authorizing the execution of the contract, the Mobile Broadcasting Corporation had not been incorporated; that the alleged representatives of said corporation—Helt, Watkins, and another—contemplated establishing a broadcasting station, either in Mobile or Montgomery; that a permit to establish a broadcasting station had been issued to Scott Helt, as trustee; that on the day the contract was signed, probably the day before, the company was incorporated, and immediately upon the execution of the contract the corporation proceeded to purchase its equipment, and completed the station on February 7, 1930, and begun broadcasting.

Watkins, on cross-examination, testified: "The two commissioners of the City of Mobile led us to believe that they would give us a contract for Five Hundred ($500.00) Dollars a month. No, sir, they didn't agree to give us the contract for Five Hundred ($500.00) Dollars at that meeting before we went to the Board of Revenue & Road Commissioners. I have forgotten when the City of Mobile agreed to give us the contract, but I believe both contracts were signed the same day

or within a day or two of each other. Yes, sir, when I came before the County Commissioners I did mention something about the city. We didn't have any contract with the City at that time. Not any bona fide agreement or contract. We didn't have a transmitter at that time. As to headquarters, I believe at that time Mr. Helt had a lease on five acres of land where the transmitter is located, subject, of course, to the station being put up there. And I believe at that time, I had discussed some headquarters at the Register office. We had not made any contract for headquarters. * * * We were down here working pretty fast. We had to work fast to get all the equipment in time. If we had not gotten the contract with the City and County, the chances are we would have gone to Montgomery to build the station. This contract influenced us, too. * * * I would not say that the contract was essential to our going on but it was an influence some —it was a pretty good contract. * * * At the time we entered this contract, we had not bought anything. We had nothing but the permit."

A further statement of the evidence is deemed unnecessary. It has been read and considered by the court in banc, and the conclusion is irresistible that the primary purpose of granting the contract in question was to induce and aid the promoters of the Mobile Broadcasting Corporation to establish said broadcasting station in the city of Mobile in anticipation of the public benefit that would result therefrom; that advertising and promoting the county's resources was a mere incident or subsidiary objective of the contract.

This contract is the foundation of the petitioner's claim, and if the county board was without authority to make the contract, it is void and the treasurer acted within his right in refusing to register the claim. Mobile County v. Williams, Judge, 180 Ala. 639, 61 So. 963.

The contention of the petitioner is that subsection 23 of section 6755 of the Code, dealing with the authority of the court of county commissioners, and under which the board of revenue and roads of Mobile county acted, as the contract itself shows, confers such authority. It provides that the court has authority "23. To set aside, appropriate and use county funds or revenue for the purpose of developing, advertising, and promoting the agricultural, mineral, timber, water, labor, and all other resources of every kind of their respective counties, and for the purpose of locating and promoting agricultural, industrial, and manufacturing plants, factories and other industries in their respective counties."

It is a question of serious doubt whether or not the making of the contract was a setting aside, an appropriation or use of county funds or revenue, but whether that is so or not, it was the granting to the Mobile Broadcasting Corporation, a contract to pay money —a thing of value—to aid in the promotion of a broadcasting station, a private enterprise; and to construe this statute as granting such power would render it obnoxious to' the provisions of section 94 of the Constitution, which provide: "The legislature shall not have power to authorize any county, city, town, or other subdivision of this state to lend its credit, *or to grant public money or thing of value in aid of, or to any individual, association,* or corporation whatsoever, or to become a stockholder in any such corporation, association, or company, by issuing bonds or otherwise." Garland v. Board of Revenue of Montgomery County, 87 Ala. 227, 6 So. 402, 403; Southern Ry. Co. v. Hartshorne, 162 Ala. 491, 50 So. 139; Rogers, Treasurer, v. White, Secretary, 14 Ala. App. 482, 70 So. 994; Griffin v. Jeffers et al., 221 Ala. 649, 130 So. 190.

In Garland v. Board of Revenue, supra, construing and applying this section of the Constitution, then section 55 of article 4 of the Constitution of 1875, it was said: *"In no project originated by individuals, whether associated or otherwise, with a view to gain, are the municipalities named permitted to participate in such manner as to incur pecuniary liability."* (Italics supplied.)

And in Southern Ry. Co. v. Hartshorne, supra, referring to that decision, it was observed: "This section (55) has, as stated, become section 94 of the Constitution of 1901, and hence is impressed in meaning and effect with the construction put upon it in Garland's Case. In the light of that decision we need hardly add that the very motive leading to the creation of the conditions to prevent the recurrence of which the provision was written was anticipated public benefits. If the public benefits were held to be sufficient to take the act without the prohibition, then its ordaining in two Constitutions in this state was wholly vain. In the Garland Case a pecuniary liability was attempted to be incurred. The same reason that forbade that course of procedure to aid private enterprises is present to condemn the diversion of public revenue in this instance. The provision is no more explicit against becoming a stockholder or affording credit by the issuance of bonds than it is that money shall not be granted. In all enterprises like railroads, canals, pikes, manufacturing establishments, etc., benefits naturally accrue to the community concerned, and it is common experience that this is true. Because it is true the trustees of government are and have always been amenable to it as an influence to induce the lending of the credit or granting the funds or property of the subordinate governments to the aid of such enterprises as foreshadow public benefits. This disposition, natural and

inevitable of gratification if not restrained, cannot be gratified by those who have control. The very existence of this disposition has resulted in the creating of the prohibition. To permit it to yet prevail is to annul one of the wisest of the Constitution's provisions." 162 Ala. 494, 495, 50 So. 139.

Appellee insists that "if we place upon Section 94 of the Constitution, the very narrow and strained construction" so as to bring the contract involved in this litigation within its influence, to use the language of the brief, "then we can hardly conceive of any contract that the county can enter into that would not violate this constitutional provision"; that if the county should enter into a contract with established mediums of advertising, such as the big daily papers of the state, it would be giving financial aid to such papers, and therefore would come within the influence of such decisions.

The answer to this argument is that the cause giving birth to this section of the Constitution was the recognized fact that "the trustees of government are and have always been amenable to" the subtle influence of anticipating that by establishing and promoting a new industry or institution in a community, though established for private gain, it brings to the community where established, some public benefits, and that such influence encourages the improvident expenditure of public money and the incurring of governmental liabilities that must be taken care of by taxation. No such influence could or would be present in negotiating a contract with an established medium of advertising, and the trustees of the government in negotiating and entering into such contract would be aided by competition, and deal at arm's length with only the benefit that would result from such advertising in view.

The judgment here is that the petitioner is not entitled to a writ of mandamus; that the court erred in ordering the issuance of the writ, and a judgment will be here rendered denying the writ and dismissing the petition.

Reversed and rendered.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.