49 So.2d 175

## OPINION OF THE JUSTICES.
### No. 120.

Supreme Court of Alabama.
Nov. 29, 1950.

508

———◆———

The Honorable Chief Justice and
 Associate Justices of the
 Supreme Court of Alabama
Montgomery, Alabama

Gentlemen:

I am informed that citizens and taxpayers in several municipalities in this state contemplate filing or have filed with the governing body of the municipality in which they respectively reside applications seeking permission to incorporate industrial development boards pursuant to the provisions of Act No. 645 adopted at the 1949 Regular Session of the Legislature of Alabama.

It is well known to those who have studied the economy of our state that the further development of industry in Alabama is necessary to achieve a desirable balance between agriculture and industry, to develop the natural resources of the state, and to provide employment for its citizens and a market for its agricultural products. It is apparent that the formation of industrial development boards under the act may prove an important—and in many cases a decisive—factor in attracting the location of industries in our state.

It is also well known that in recent years there has been a trend on the part of industries concentrated in the Northeastern sections of the United States to decentralize operations and transfer factories to other parts of the country. Keen competition exists among civic-minded groups in the various states in an effort to induce the location of such factories in their respective localities. The said Act No. 648 was adopted for the apparent purpose of aiding the citizens in this state in their efforts to in-

duce the location of new plants and factories in this state.

It may be well to give a concrete example illustrating the type of undertaking being planned under that act by public-spirited citizens over the state. In one case in which an industrial development board has been incorporated by citizens and taxpayers under the provisions of said Act No. 648, the board of directors of that corporation has succeeded in inducing a large industrial firm now located in New England engaged in manufacturing locks to agree to locate a factory in the municipality in which the development board was incorporated. One of the inducements to the manufacturer was that the development board would construct a building and lease it to the manufacturer for use as a factory. The development board proposes to finance the building by the issuance of its bonds to be payable solely out of revenues from the proposed lease and to be secured by a pledge thereof and by a mortgage on the building. The factory will give regular employment to not less than three hundred persons and will have an annual payroll of not less than $750,000. The manufacturer has stated that if the initial operation is successful, it will probably transfer from New England to this State other portions of its operations involving large additional payrolls.

I am informed that similar plans are being made by citizens and taxpayers in numerous other municipalities in this state. In view of all these plans, it will be readily seen that a determination as to the validity of Act No. 648 is a matter of great public importance.

Pursuant to Section 34 of Title 13 of the Code of Alabama of 1940, I, therefore, respectfully request your opinion on the following important constitutional questions:

(1) Is said Act No. 648 invalid because violative of Section 94 of the Constitution of Alabama?

(2) Is said Act No. 648 invalid because violative of Section 93, as amended, of said Constitution?

(3) Would bonds issued by a corporation organized under said Act No. 648 constitute an indebtedness of the municipality in which the corporation is organized within the meaning of Section 225 of said Constitution?

Respectfully yours,
James E. Folsom
GOVERNOR.

Hon. James E. Folsom
Governor of Alabama
C A P I T O L
Montgomery, Alabama

Dear Sir:

We acknowledge receipt of your communication of November 3, 1950, in which you request our opinion on certain constitutional questions in connection with Act No. 648 adopted at the 1949 Regular Session of the Legislature of Alabama.—General Acts of Alabama, Regular Session, p. 991.

Since the questions propounded relate to the validity of the foregoing act, we think it would be helpful to summarize briefly the provisions of the act. Citizens and taxpayers of each municipality in the state are empowered, upon approval by the governing body of the municipality, to organize non-profit public corporations for the purpose of promoting industry and developing trade by inducing manufacturing, industrial and commercial enterprises to locate in the state. Corporations organized under the act are authorized to acquire land and equip buildings thereon whether now or hereafter existing suitable for use (a) by any industry for manufacturing, processing or assembling agricultural or manufactured products or (b) by any commercial enterprise for storing or selling such products. Such a corporation is not authorized to operate its facilities, but is authorized to lease them and to finance their acquisition by the issuance of its bonds payable solely from the revenues derived from the lease or sale of such facilities. The act expressly provides that the municipality shall not be liable for payment of the bonds of such a corporation or for the performance of any of its obligations, and that none of the bonds or other obligations of the corporation shall be construed to constitute an indebtedness of the municipality. The act provides that

no part of the net earnings of a corporation organized thereunder shall inure to the benefit of any private person or corporation. The act authorizes the board of directors of such a corporation to provide for payment of its surplus earnings, if any, to the municipality in which the corporation was organized, and upon fulfillment of the purposes for which the corporation was formed and payment of all its obligations, to dissolve the corporation, whereupon title to the properties owned by it at the time of its dissolution vests in said municipality.

I. Our answer to your first question is in the negative. We set out § 94 of the Constitution of 1901 as follows: "The legislature shall not have power to authorize any county, city, town, or other subdivision of this state to lend its credit, or to grant public money or thing of value in aid of, or to any individual, association, or corporation whatsoever, or to become a stockholder in any such corporation, association, or company, by issuing bonds or otherwise."

■ The constitutional provision now appearing as § 94 of the Constitution of 1901 was originally adopted in substantially its present form as Article IV, Section 55 of the Constitution of 1875. This court has many times considered this constitutional provision and has fully discussed its purpose, the evils it was designed to prevent and the meaning of its language. Garland v. Board of Revenue of Montgomery County, 87 Ala. 223, 6 So. 402, 403. It has been pointed out that the evil to be remedied is the expenditure of public funds in aid of private individuals or corporations, regardless of the form which such expenditure may take, and that Section 94 prohibits, in the words of the decision in Garland v. Board of Revenue, supra, "any aid * * * by which a pecuniary liability is incurred". See also Southern R. Co. v. Hartshorne, 162 Ala. 491, 50 So. 139; Rogers v. White, 14 Ala.App. 482, 70 So. 994; Swindle v. State ex rel. Pruitt, 225 Ala. 247, 143 So. 198; Griffin v. Jeffers, 221 Ala. 649, 130 So. 190; Stone v. State ex rel. Mobile Broadcasting Corp., 223 Ala. 426, 136 So. 727, 730.

In the last cited case this court said: "* * * the cause giving birth to this section of the Constitution was the recognized fact that 'the trustees of government are and have always been amenable to' the subtle influence of anticipating that by establishing and promoting a new industry or institution in a community, though established for private gain, it brings to the community where established, some public benefits, and that such influence encourages the improvident expenditure of public money and the incurring of governmental liabilities that must be taken care of by taxation."

■ We think it clear that Act No. 648 involves no expenditure of public money and the incurring of no liability that must or can be taken care of by taxation. Under the act a municipality is not authorized to spend public funds.

■ An analysis of the actions which a municipality is authorized to take with respect to corporations organized under Act No. 648 reveals that the following are the only points of contact or relationship between a municipality and an industrial development board organized therein: (a) the governing body of the municipality may approve a form of certificate of incorporation submitted by citizens and taxpayers and may authorize the formation of a corporation under the act; (b) any amendment of the certificate of incorporation must be approved by the governing body of the municipality; (c) the board of directors of the corporation are to be appointed by the governing body of the municipality, subject to the requirements for eligibility contained in the act; (d) if the board of directors of the corporation determines by resolution that sufficient provision has been made for full payment of the expenses, bonds, or other obligations of the corporation, any of its net earnings then remaining shall be paid to the municipality with respect to which the corporation was authorized; and (e) upon dissolution of the corporation by resolution of its board of directors, the property of the corporation vests in the municipality.

Clearly none of the actions of the municipality with respect to an industrial development board constitutes the lending of credit, a grant of public money or thing of value or becoming a stockholder in a private corporation, association or company.

The only actions which the municipality is authorized to take by Act No. 648 are those outlined in clauses (a), (b) and (c) above. Provisions making the formation of the corporation under the act subject to the consent of the municipality and giving the municipality the power to appoint the board of directors of the corporation certainly do not involve the lending of the municipality's credit or the granting of public money or thing of value. The existence of any corporation, private or public, is dependent upon laws authorizing its creation. Being an artificial entity existing only by reason of law, the corporation can come into existence only upon compliance with the laws of the state which confers life upon it. The functions of the corporation are local in character. So we do not think it inappropriate for the legislature to delegate to its political subdivision in the locality affected—in this case a municipality—the power to supervise and control within the limits and requirements set by the legislature the formation of the corporation.

The provisions referred to in the preceding clauses (d) and (e) confer no power upon the municipality. Those provisions do confer powers upon the board of directors of the corporation organized under the act and authorize such board of directors, under certain circumstances, in effect to make donations to the municipality in which the corporation is organized. But it is not the donation of money or other property to a municipality that § 94 is designed to prohibit and by its terms does prohibit, but the donation of money or property or other thing of value by a municipality.

An industrial development board organized under Act No. 648 is a nonprofit corporation having no capital stock. We, therefore, think that the municipality cannot be said to be a stockholder of an industrial development board organized pursuant to the act.

Furthermore an industrial development board organized under Act No. 648 cannot be said to be the alter ego or agent of the municipality so that the acts of such a board are the acts of the municipality. An industrial development board under Act No. 648 is a separate and independent corporate entity, the management of the affairs of which is vested in a board of directors. After the governing body of a municipality has authorized the incorporation of an industrial development board under Act No. 648 and has appointed the members of its board of directors (who serve for staggered terms of six years each), it has no further control over the management and affairs of the corporation, except to appoint additional directors upon expiration of the terms of the incumbents or upon the occurrence of vacancies. Act No. 648 expressly and specifically provides that the municipality shall not in any event be liable for the payment of the principal of or interest on any bonds of the corporation or for the performance of any obligation of the corporation and that the debts and obligations of the corporation organized thereunder shall not be construed to be debt and obligations of the municipality in which the corporation is organized. None of the evils sought to be prevented by Section 94 can arise as the result of any activity of a corporation organized under Act No. 648, since the incurring of obligations by such a corporation cannot result in an expenditure of public funds or in an increased burden of public debt or taxation.

It is well established by the decisions of this court that a public corporation is a separate entity from the state and from any local political subdivision, including a city or county, within which it is organized. This court has often held that the debts of a public corporation or quasi-corporation are not debts against the state within the meaning of § 213, as amended, of the Constitution of Alabama and do not constitute indebtedness of a county or municipality within the meaning of §§ 224 and 225, respectively, of the Constitution of Alabama.

Among the public corporations and quasi-corporations whose debts have been held not to constitute debts of the applicable political entity (whether state, county or municipality), within the meaning of constitutional debt limitations are the following: Alabama State Bridge Corporation, Alabama Highway Corporation, Alabama Bridge Authority, Inc., Alabama College, Alabama Public Hunting and Forestry Association, Inc., Alabama State Employment Security Corporation, the State Board of Education, the Department of State Docks and Terminals, County Boards of Education, City Boards of Education and Water Works Boards.

The Justices of this court gave their opinion that inasmuch as revenue bonds (in excess of $10,000,000 permitted by the Mobile Port Amendment) issued by the Department of State Docks and Terminals are not debts of the state within the meaning of Section 213 of the Constitution, their issuance by the foregoing entity does not constitute prohibited action by the state under Section 93 of the Constitution. Opinion of the Justices, 247 Ala. 663, 26 So.2d 103; In re Opinion of the Justices, 249 Ala. 180, 30 So.2d 715; see also Opinion of the Justices, 252 Ala. 465, 41 So.2d 761.

■ The reasoning underlying the cases holding that debts and other obligations of public corporations and quasi-corporations are not debts of the political subdivision in which they operate or of the state, applies with equal force to the proposition that the operations of a corporation under Act No. 648 which has a separate corporate existence from a municipality and which is without power to impose any liability on the municipality cannot be deemed to be the actions of the city or town, as the case may be, within the meaning of Section 94 of the Constitution. No municipality has any control over the expenditure of funds or the incurring of obligations by an industrial development board organized under Act No. 648 and no municipality can incur any liability upon any obligation incurred by such corporation. We think it necessarily follows that the actions of an industrial development board organized under Act No. 648 do not constitute actions taken by a city or town within the meaning of Section 94.

■ We do not think that a corporation organized under Act No. 648 is a subdivision of the state within the meaning of Section 94 of the Constitution. So far as we are aware this court has not construed the words "other subdivision of this state" contained in Section 94 of the Constitution. In several cases, however, this court has construed the words "other political subdivisions of counties" contained in Section 222 of the Constitution of Alabama, and has held that public corporations and other entities which do not possess governmental powers are not political subdivisions within the meaning of Section 222. In Smith v. Waterworks Board of City of Cullman, 234 Ala. 418, 175 So. 380, 383, the court said of the water works board of a municipality: "Since the corporation is not one designated in section 222 of the Constitution, that section has no application."

And in Atkinson v. City of Gadsden, 238 Ala. 556, 192 So. 510, 513, it was said: "The bond issue is not by the municipality, but by the Water Works Board and did not have to be voted on under Section 222 of the Constitution."

"In Harkins v. Smith, 204 Ala. 417, 85 So. 812, 814, it was contended that a drainage district was a political subdivision within the meaning of Section 222, and that the issuance of its bonds was required, therefore, to be approved by the qualified electors residing within the drainage district. The court said:

"It may be pertinent to observe that when section 222 was incorporated into the Constitution no such organization or public agencies as drainage districts were authorized by our laws, and to come within the influence of this section such districts must fall clearly within the letter and spirit of its provisions; this for the reason that we are dealing with the sovereign police power of the state, and a constitutional limitation placed thereon.

"One has but to read the quoted section and apply to it the maxim ejusdem generis, often resorted to and useful in the inter-

pretation of Constitutions and statutes, to see that to come within the influence of the quoted section the 'district' or 'other political subdivision of the county' must be a district or subdivision wherein some governmental power is committed to and exercised by the qualified voters of such district for the common good of all. * * *

"These considerations lead us to the conclusion, and we so hold, that a drainage district created under this act is not a political subdivision of the state or county, within the meaning of section 222 of the Constitution of 1901."

As we said above, our answer to your first question is in the negative.

II. Your second question is answered in the negative. The pertinent portion of Section 93 of the Constitution of 1901 as last amended is as follows: "The state shall not engage in works of internal improvement, nor lend money or its credit in aid as such, except as may be authorized by the constitution of Alabama or amendments thereto; nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation, except as may be expressly authorized by the constitution of Alabama, or amendments thereto."

 It is clear that a corporation organized under Act No. 648 cannot be deemed to be embraced within the term "the state" contained in the foregoing provisions of Section 93. The principle that a corporation organized under Act No. 648 being a separate entity cannot be considered identical with a municipality applies with even greater force to the state than to the municipality within which such a corporation may be organized. Act No. 648 authorizes no action whatever on the part of the state. There is no basis whatever for identifying a public corporation under the act with the State of Alabama.

 It is established that the inhibitions upon a state contained in Section 93 have reference solely to the state as an entity distinct even from its political subdivisions such as counties or towns. Sheppard v. Dowling, 127 Ala. 1, 28 So. 791; Ex parte

Selma & Gulf Railroad Company, 45 Ala. 696.

 This court has many times declared that Section 93 is directed at pecuniary expenditure or involvement by the state. In re Opinion of the Justices, 247 Ala. 66, 22 So.2d 521, 525. In the last cited opinion the Justices said: "The evils at which Section 93 of the Constitution were directed are well known. The framers of the Constitution were determined that financial disaster should not come to the State through the acts of reckless officials by subscription to enterprises supposed to serve the public good, yet in truth dominated by private interest."

We repeat that the answer to your second question is in the negative.

 III. It is clear that the bonds of a corporation organized under Act No. 648 will not constitute an indebtedness of the municipality within which it is organized for the reason that such bonds are exclusively the obligations of the issuing corporation, an entity separate from the municipality. The bonds authorized in Act No. 648 to be issued by corporations organized thereunder are revenue bonds, payable solely out of the revenues derived by the corporation from the lease or sale of its facilities. Section 12 of the Act provides that the municipality in which such a corporation is organized shall in no event be liable for payment of any bonds issued by such corporation or for the performance of any obligations undertaken by the corporation, and that no such bonds or obligations shall be deemed to constitute an indebtedness of the municipality within meaning of any constitutional or statutory provision whatsoever. Authorities supra. Your third question is answered in the negative.

Respectfully submitted,
JOEL B. BROWN,
ARTHUR B. FOSTER
J. ED LIVINGSTON,
THOMAS S. LAWSON,
ROBERT T. SIMPSON,
DAVIS F. STAKELY,
Associate Justices.