Taft, C. J.
Belator’s first contention is that Sections 122.13 to 122.36, Bevised Code, are invalid by reason of the limitations on legislative power set ferth in Section 4 of Article VIII of the Constitution of Ohio, which reads:
‘ ‘ The credit of the state shall not, in any manner, be given or loaned to, or in aid of, any individual association or corporation whatever; nor shall the state ever hereafter become a joint owner, or stockholder, in any company or association in this state, or elsewhere, formed for any purpose whatever.”
In determining whether “the credit of the state” will be given or loaned on the facts alleged and admitted in the instant case, we must first determine the meaning of the words “the credit of the state.” Those words were used by the people in 1851 when Section 4 of Article VIII became a part of the Constitution.
In Burrill’s Law Dictionary published shortly thereafter in 1859, “credit” is defined as “payment of money, in confidence of future repayment” (i. e., what Webster, infra, describes as “a loan of money”) and as “ability to borrow”; and *47 “creditor” is defined as “one who gives or has given credit to another” and as “one to whom a debt is due.”
Somewhat similar definitions are contained in Webster’s Third New International Dictionary published in 1961, where “credit” is defined as “a loan of money” and as “an amount or limit to the extent of which a person may receive goods or money for payment in the future” (i. e., what Bur rill, supra, describes as “ability to borrow”); and “creditor” is defined as “one who gives credit” and as “one to whom money is due.”
In deciding this case, it is not necessary to try to give an all inclusive definition of the word “credit” as that word is used in Section 4 of Article VIII of the Ohio Constitution. It is sufficient to recognize that that word in that section includes within its meaning (1) a loan of money and (2) the ability to borrow or borrowing power (i. e., the ability to acquire something tangible in exchange for a promise to pay for it).
Likewise, it is sufficient to recognize that a creditor is one who gives credit to another or one to whom a debt is due.
The admitted allegations in the pleadings in the instant case contemplate that the commission will be a creditor of each of the borrowers to whom the commission proposes to give “a loan of money” and will therefore be giving credit (i. e., a loan of money) to each of those borrowers.
There will also be a giving or lending of credit by the commission to each of those borrowers if the word “credit” is considered as meaning “the ability to borrow” or borrowing power.
In order to make two of the loans involved in the instant case, Section 122.17, Revised Code, required the commission to find that “the proposed borrower * * * is unable to finance the proposed project through ordinary financial channels upon reasonable terms and at reasonable interest rates.” As to the 90% loan, that statute required the commission to find “that 40% * * # cannot be financed” even by a first mortgage on the proposed project to a private financial institution, such as a bank, savings and loan company or insurance company.
It is apparent, therefore, that, as to each proposed borrower, its “ability to borrow” or borrowing power (i. e., credit) is not sufficient to enable it to borrow the money which the commission proposes to loan to such borrower on terms as advan *48 tageous as the terms which the commission proposes to provide. In effect, therefore, each such borrower will be receiving more credit (or borrowing power) because of the commission’s loan to it than it could otherwise get from any financial institution. At least to that extent, the commission is giving or loaning “credit * * * to, or in aid of” that borrower.
The “credit” so given or loaned is “credit,” and the money that the commission has to lend is money, which credit and money the commission has by reason of the power conferred upon it by the state to “issue revenue bonds of the state” and to receive “grants, gifts, and contributions.”
Furthermore, Section 122.14, Revised Code, specifically provides that the “commission is a body both corporate and politic in this state, and the exercise by it of the powers conferred by Sections 122.14 to 122.36, inclusive # * * is an essential governmental function of the state. ’ ’ Thus, no contention has been or could reasonably be made that the loaning or borrowing of money by the commission, which the pleadings admit will take place, would not be the loaning or borrowing of money by the state. It obviously would be. Neither is it contended nor could it reasonably be contended that the borrowing power of the commission is not the borrowing power of the state. It obviously is. In this respect, this case differs from the situation involved in Opinion of the Justices (1950), 254 Ala., 506, 49 So. (2d), 175, and Andres v. First Ark. Development Finance Corp. (1959), 230 Ark., 594, 324 S. W. (2d), 97, relied upon by the commission, where, under the statutes involved, the borrowing and loaning authorized were borrowing and loaning by an entity separate from the state and not borrowing and loaning by the state.
In two instances in this case, the credit is being given to private corporations for profit. In the other, it is being given to a public corporation but in order to aid a private corporation for profit. The fact, that in each instance there may be a public purpose for making the loan (i. e., to increase employment), does not affect the fact that in each instance credit is being given either to or in aid of a private corporation for profit.
Such a private corporation for profit is certainly included within the meaning of the words “any individual association or corporation whatever” in Section 4 of Article VIII of the Ohio *49 Constitution. The instant case differs from State, ex rel. Kauer, Dir., v. Defenbacher, Dir. (1950), 153 Ohio St., 268, 91 N. E. (2d), 512 (the first turnpike decision), and State, ex rel. Leaverton, v. Kerns, Aud. (1922), 104 Ohio St., 550, 136 N. E., 217, which held that the state’s credit could be given or loaned “to or in aid of a public organization created for a public purpose.” See State, ex rel. Speeth et al., Board of County Commrs., v. Carney, Aud. (1955), 163 Ohio St., 159, 126 N. E. (2d), 449, and State, ex rel. McElroy, Atty. Genl., v. Baron et al., Dirs. of Toledo-Lucas County Port Authority (1959), 169 Ohio St., 439, 444, 160 N. E. (2d), 10, apparently also so holding.
Therefore, as to each loan, we have a situation where the commission proposes in effect that “the credit of the state shall * * * be given or loaned to, or in aid of” a private “corporation.” Section 4 of Article VIII of the Ohio Constitution specifically states that this “shall not, in any manner” be done.
Respondents point out that Section 6 of Article VIII of the Ohio Constitution provides against any “laws * * * authorizing any county, city town or township * * * to become a stockholder in any joint stock company, corporation, or association * * * or to raise money for, or to loan its credit to, or in aid of, any such company, corporation, or association. ’ ’
Respondents contend that, because there is a prohibition against raising money for such organizations in Section 6 and not in Section 4, the state may raise money for a private corporation notwithstanding the provisions of Section 4.
So far as this case is concerned, the only raising of money for the three borrowers involved necessarily involves a giving or loaning of the state’s credit. In such an instance, such raising of money is specifically prohibited by Section 4 of Article VTII of the Ohio Constitution.
The commission contends in effect that there is no giving or lending of credit of the state within the meaning of Section 4 of Article VIII of the Ohio Constitution, where no debt of the state will be incurred. In support of this contention, it is argued that the limitations of Sections 1, 2, 3 and 4 of Article VIII of the Ohio Constitution were all designed to protect taxpayers from the resulting burdens of excessive government spending; and that, where no indebtedness will be created, tax *50 payers will not be burdened, so that the reason for those limi-' tations will not exist and they should not apply.
Respondents suggest that their position (that there can be no prohibited giving or loaning of credit of the state so long as the state does not incur an indebtedness) is supported by Kasch v. Miller, Supt. (1922), 104 Ohio St., 281, 135 N. E., 813; State, ex rel. Public Institutional Building Authority, v. Neffner, Secy. of State (1940), 137 Ohio St., 390, 30 N. E. (2d), 705; State, ex rel. Gordon, City Atty., v. Rhodes, Mayor (1952), 158 Ohio St., 129, 107 N. E. (2d), 206; and State, ex rel. Pugh et al., Trustees, v. Sayre, Aud. (1914), 90 Ohio St., 215, 107 N. E., 512.
In the Kasch case, the bondholders to whom it was claimed that the state’s credit was being given or loaned were giving their money for the promise of the state to repay that money out of revenues from property acquired with that money. See also State, ex rel. State Bridge Commission, v. Griffith, Secy. of State (1940), 136 Ohio St., 334, 25 N. E. (2d), 847, and State, ex rel. Allen, v. Ferguson, Aud. (1951), 155 Ohio St., 26, 97 N. E. (2d), 660. In the instant case, the credit of the state, both as borrowing power and in the form of a loan of money, is being given or loaned to private borrowers who are giving nothing tangible in return therefor, — only their promises to repay the moneys advanced to them.
Neither the Neffner nor Rhodes case involved consideration by this court of any question as to whether there was a giving or loaning of credit. Actually the opinion in the Rhodes case states that there may be a lending of credit even though no debt is incurred. The Pugh case did not even involve any borrowing or any lending.
Outside Ohio, there are authorities holding or at least indicating that there can be no prohibited giving or loaning of credit of the state or of one of its subdivisions so long as the one claimed to have given or loaned credit has incurred no indebtedness. Faulconer v. City of Danville (1950), 313 Ky., 468, 232 S. W. (2d), 80; Bennett v. City of Mayfield (Kentucky, 1959), 323 S. W. (2d), 573; West, Mayor, v. Industrial Development Board of Nashville (1960), 206 Tenn., 154, 332 S. W. (2d), 201; Wayland v. Snapp (1960), 232 Ark., 57, 334 S. W. (2d), 633. See Andres v. First Ark. Development Finance Corp., supra (230 Ark., 594); Opinion of the Justices, supra (254 Ala., 506); *51 Holly v. City of Elizabethton (1950), 193 Tenn., 46, 241 S. W. (2d), 1001 (dictum). But cf. Darnell v. County of Montgomery (1957), 202 Tenn., 560, 308 S. W. (2d), 373. There are also authorities holding to the contrary. State, ex rel. Beck, Atty. Genl., v. City of York (1957), 164 Neb., 223, 82 N. W. (2d), 269; Village of Moyie Springs v. Aurora Manufacturing Co. (1960), 82 Idaho, 337, 353 P. (2d), 767; State v. Town of North Miami (Florida, 1952), 59 So. (2d), 779.
Section 1 of Article VIII of the Ohio Constitution specifies that “the state may contract debts to supply casual deficits or failures in revenues, or to meet expenses not otherwise provided for; but the aggregate amount of such debts, direct and contingent * * * shall never exceed $750,000,” Section 2 of that article states that, additionally, “the state may contract debts to repel invasion, suppress insurrection, defend the state in war, or to redeem the present outstanding indebtedness of the state,” and Section 3 specifies that “no [other] debt whatever shall hereafter be created by, or on behalf of the state. ’ ’
In view of the provisions of Sections 1, 2 and 3 of Article VIII, there would appear to be no reason for the provisions of Section 4 of that article against giving or lending the credit of the state if a giving or lending of credit of the state would occur only where an indebtedness of the state would be involved. In such an instance, the prohibition of such giving or lending of the state’s credit to an individual association or corporation would certainly have been already prohibited by Sections 1, 2 and 3 of that article.
Therefore, to give some meaning to the provisions of Section 4 of Article VIII prohibiting the giving or loaning of the credit of the state, we must conclude that those provisions prohibit a giving or loaning of that credit even where no “debts” of the state, either “direct or contingent” have been incurred.
Furthermore, Section 4 of Article VIII of the Ohio Constitution specifies that the state shall never “become a joint owner, or stockholder, in any company or association.” It could hardly be contended with reason that the state could do this even in an instance where no debts of the state, either direct or contingent, had been incurred. Nothing in the Constitution indicates that any of the prohibitions of Section 4 of Article VIII are not to apply merely because no debts of the state have been or will be incurred.
*52 Where the state raises money by the sale of revenue bonds which do not involve any debt of the state, could anyone contend with reason that the money so raised is not money of the state ? If such money were stolen, the state would certainly regard it as state money.
If the money so raised without incurring any indebtedness of the state is state money, it obviously does not cease to be state money because the state proposes to loan it to a borrower.
Also, the sale of revenue bonds of the state to raise money necessarily involves a borrowing of money even though no indebtedness of the state results. If the bonds are not paid, the borrowing power of the state will as a result be adversely affected, even though the bonds do not represent a debt of the state. The borrowing power of the state is related to the taxing power because, to the extent that the state’s borrowing power is lessened, a greater burden will be placed upon its taxing power.
The judicial power conferred upon the Supreme Court by the Constitution of Ohio does not authorize this court to amend or change the intended meaning of the words used by the people of Ohio in their Constitution. In our opinion, changes in the Ohio Constitution should be made in accordance with the provisions therein for its amendment. We regret the necessity of disagreeing with the legislative and executive branches of our government, but our duty under the Constitution is clear. We are unanimously of the opinion that the proposed borrowing and lending by the commission in the instant case would represent a giving or loaning of the credit of the state of Ohio in aid of private interests and are prohibited by the express words of Section é of Article VIII of the Ohio Constitution.
In view of this conclusion, it is not necessary for us to consider the other questions raised in the instant case. The demurrer to the answer is sustained, and a writ of quo warranto is allowed as prayed for.

Writ allowed.

Zimmerman, Kerns, O’Neill, Griffith, Herbert and Gibson, JJ., concur.
Kerns, J., of the Second Appellate District, sitting by designation in the place and stead of Matthias, J.