198 So.2d 269

## OPINION OF THE JUSTICES.
### No. 188.

Supreme Court of Alabama.

April 17, 1967.

M. Camper O'Neal, Dumas, O'Neal & Hayes, Birmingham, amici curiae.

To the Members of the House of Representatives
State Capitol
Montgomery, Alabama

Dear Sirs:

We are in receipt of House Resolution No. 64 which recites as follows:

"HOUSE RESOLUTION NO. 64.

"WHEREAS, important constitutional questions are presented by House Bill No.

*217*, a copy of which is attached hereto, now pending in the Legislature of Alabama:

"NOW, THEREFORE, BE IT RESOLVED BY THE HOUSE OF REPRESENTATIVES OF ALABAMA that the Justices of the Supreme Court of Alabama are hereby respectfully requested to render their opinion as provided by Section 34 of Title 13 of the Code of Alabama of 1940 on the following important constitutional questions:

"(1) Does the bill contain more than one subject in violation of Section 45 of the Constitution?

"(2) Is the subject of the bill clearly expressed in its title, as required by Section 45 of the Constitution?

"(3) Does the bill violate Section 222 of the Constitution by authorizing the issuance of bonds without an election of the qualified voters of the municipality, the governing body of which has authorized the organization of a public corporation, as contemplated by said bill?

"(4) Does the bill violate Section 225 of the Constitution by authorizing the issuance of bonds and other securities without regard to the limitation of indebtedness prescribed by said Section 225?

"(5) Does the bill violate the provisions of Section 93 of the Constitution?

"(6) Does the bill violate the provisions of Section 94 of the Constitution?

"(7) Do the provisions of the bill authorizing the acquisition, financing, ownership, leasing or granting of permits or concessions with respect to so-called public accommodation facilities as therein defined violate Section 93 of the Constitution?

"(8) Do the provisions of the bill authorizing the acquisition, financing, ownership, leasing or granting of permits or concessions with respect to so-called public accommodation facilities as therein defined violate Section 94 of the Constitution?"

"HB 217

"A BILL
TO BE ENTITLED
AN ACT

"To authorize the incorporation with respect to the several municipalities in this state, of non-profit public corporations for the purpose of acquiring, enlarging, expanding, owning, operating, leasing and disposing of properties to the end that such corporation may be able to promote public interests and participation in sports, athletics and recreational activities and to provide and improve public parks in this state, including all buildings, facilities and improvements incident thereto or useful in connection therewith, including but without limitation, picnic areas, camp sites, trailer sites, cabins, lodges, roads and trails for hiking, bicycling or horseback riding, nature trails, botanical gardens, zoos, museums, athletic fields, golf courses, tennis and badminton courts, bowling alleys, skeet, trap, rifle and archery ranges, swimming pools, bathhouses, beaches, docks and marinas, boating facilities, areas and facilities for fishing and hunting, areas and facilities for aquatic entertainment and sports, stadiums, coliseums, arenas, grandstands, auditoriums, meeting halls, pavilions, centers for cultural entertainment, music, drama, exhibitions and exhibits, amphitheatres, administrative or office buildings, facilities and improvements for the accommodation of visitors to such public parks, including but without limitation, motels, restaurants, coffee shops, stores to provide groceries, drugs and other items, sports, gifts, souvenir shops and launderettes, provided, however, that such corporations shall not be authorized to operate as a commercial enterprise any such shops, stores, motels or restaurants; to provide the method of organizing such corpora-

tions and the management thereof; to specify the powers of such corporation; to provide for the issuance by any such corporation for any of its corporate purposes interest bearing revenue bonds and other interest bearing revenue securities payable solely out of the revenues and receipts from any such properties; to provide that any such bonds or securities shall constitute negotiable instruments; to provide that such bonds or securities may be secured by a pledge of such revenues and receipts and by a foreclosable mortgage on such properties; to authorize the refunding of any such bonds or securities; to provide for remedies in the event of default in such bonds or securities; to provide that such municipalities shall not be liable for any obligation or agreement of such corporations; to exempt from all taxation in this state each such corporation, its property, corporate activities, income, revenues, securities, the income from its bonds or securities, and conveyances, leases, mortgages and deeds of trust to which such corporation is a party; to provide for the filing of certificates of incorporations, deeds, mortgages and certificates of dissolution without payment of tax; to provide that the corporation may in its discretion publish a notice of the adoption of a resolution authorizing the issuance of bonds of the corporation, and to provide that any action or proceeding questioning the validity of such bonds or the pledge and mortgage to secure the same or the proceedings authorizing the same must be commenced within twenty days after the first publication of said notice; to provide the procedure for dissolution of any such corporation and the vesting of title to its property and to declare that this act shall be cumulative and not restrictive of powers otherwise provided by law.

"BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

"Section 1. It is the intention of the Legislature by the passage of this act to promote the public health and general welfare by authorizing the incorporation in the several municipalities in this State of public corporations to acquire, enlarge, improve, expand, own, operate, lease and dispose of properties to the end that such corporation may be able to promote public interest and participation in sports, athletics and recreational activities and to provide or improve public parks in this State, including all buildings, facilities and improvements incident thereto or useful in connection therewith. It is the further intent of the Legislature by the passage of this act to vest such public corporations with all powers that may be necessary to enable them to accomplish such purposes. This act shall be liberally construed in conformity with the said intention.

"Section 2. Whenever used in this act unless a different meaning clearly appears in the context, the following terms, whether used in the singular or plural, shall be given the following respective interpretations:

" 'Corporation' shall mean any corporation organized pursuant to the provisions of this act.

" 'Municipality' means any incorporated city or town in this state with respect to which a corporation may be organized.

" 'Project' means any land and interest therein, including forests, rivers, streams, waterways, and lakes, and any buildings or other improvements thereon, and all real and personal properties deemed necessary in connection therewith, whether or not now in existence, which shall be suitable for a public park and all buildings, facilities and improvements incident thereto or useful in connection therewith, including but without limitation picnic areas, camp sites, trailer sites, cabins, lodges, roads and trails for hiking, bicycling or horseback riding, nature trails, botanical gardens, zoos, museums, athletic fields, golf courses, tennis and badminton courts, bowling alleys, skeet, trap, rifle and archery ranges, swimming pools, bathhouses, beaches, docks and ma-

rinas, boating facilities, areas and facilities for fishing and hunting, areas and facilities for aquatic entertainment and sports, stadiums, coliseums, arenas, grandstands, auditoriums, meeting halls, pavilions, centers for cultural entertainment, music, drama, exhibitions and exhibits, amphitheatres, administrative or office buildings and public accommodation facilites as hereinafter defined.

" 'Public accommodation facilities' means buildings, facilities and improvements for the accommodation of visitors to such public park, including without limitation of the foregoing, motels, restaurants, coffee shops, stores to provide groceries, drugs and other items, sports, gift and souvenir shops and launderettes, provided, however, that nothing contained in this act is intended to authorize any such corporation itself to operate as a commercial enterprise any such shops, stores, motels, or restaurants.

"Section 3. Whenever any number of natural persons, not less than three, shall file with the governing body of any municipality of this State an application in writing for authority to incorporate a public corporation under the provisions of this act, and shall set forth in said application a brief description of the project to be acquired or improved by such corporation, and if it shall be made to appear to such governing body that each of said persons is a duly qualified elector of and owner of property in said municipality and if the governing body of said municipality shall adopt a resolution which shall be duly entered upon the minutes of such governing body wherein it shall be found and determined that there is a public need for the proposed project, and that it is wise, expedient, necessary or advisable that such a corporation be formed, and that the persons filing said application shall be authorized to proceed. to form such corporation, then said persons shall proceed to organize such corporation by executing, acknowledging and filing a certificate of incorporation as herein provided. No corporation shall be

formed hereunder unless the application provided for herein shall be made and unless the resolution provided for herein shall be adopted, provided, the inadequacy of the description of the proposed project in the application for incorporation shall not affect the validity of the incorporation of such corporation. The granting of authority for the incorporation of one public corporation under this act shall not preclude the granting of authority by the governing body of the same municipality for the incorporation of other public corporations hereunder; provided that such other public corporations shall be required to adopt a name or designation sufficient to distinguish them from any public corporation theretofore incorporated by such municipality under this act.

"Section 4. The certificate of incorporation of any corporation organized under this act shall set forth (a) the names and residences of the applicants, together with a recital that each of them is an elector of and taxpayer in the municipality; (b) the name of the corporation which shall be the Public Park and Recreation Board of the _____ of _____ (the blank spaces to be filled in with the name of the municipality, including the proper designation thereof as a City or Town), if such name shall be available for use by the corporation and if not available, then the incorporators shall designate some other similar name that is available; (c) a recital that permission to organize the corporation has been granted by a resolution duly adopted by the governing body of the municipality and the date of the adoption of such resolution; (d) the location of the principal office of the corporation (which shall be in the municipality); (e) the purposes for which the corporation is proposed to be organized, which purposes shall be those set forth in the application for authority to incorporate; (f) the number of directors of the corporation; (g) the period for the duration of the corporation (if the duration is perpetual, the fact should be stated); and (h) any other matter which the applicants

may choose to insert therein which shall not be inconsistent with this act or with the laws of the State of Alabama. The certificate of incorporation shall be subscribed and acknowledged by each of the applicants before an officer authorized by the laws of Alabama to take acknowledgments to deeds.

"Section 5. When executed and acknowledged in conformity with the preceding section, the certificate of incorporation shall be filed with the Judge of Probate of any county in which may be located any portion of the territory embraced within limits of the municipality. The Judge of Probate shall thereupon examine the certificate of incorporation and, if he finds that the recitals contained therein are correct, that the requirements of the preceding section have been complied with, and that the name is not identical with or so nearly similar to that of another corporation already in existence in this state as to lead to confusion and uncertainty, he shall approve the certificate of incorporation and record it in an appropriate book or record in his office. When such certificate has been so made, file (sic) and approved, the applicants shall constitute a public corporation under the name set out in the certificate of incorporation.

"Section 6. If any corporation formed under this act has accidentally or inadvertently failed to comply with the requirements hereof in its organization, such omission or defect may be corrected by filing an amendment as provided in this section. The certificate of incorporation of any corporation formed under this act may also at any time and from time to time be amended so as to make any changes therein and add any provisions thereto which might have been included in the certificate of incorporation in the first instance. Any amendment shall be effected in the following manner: The members of the Board of Directors of the corporation shall file with the governing body of the municipality an application in writing seeking permission to amend the certificate of incorporation specifying in such application the amendment proposed to be made. Such governing body shall consider such application and, if it shall be (sic) appropriate resolution duly find and determine that it is wise, expedient, necessary and advisable that the proposed amendment be made, and if an additional project or projects are proposed, that there is a public need therefor and shall approve the form of the proposed amendment and shall authorize the amendment to be made, then the persons making such application shall execute an instrument embodying the amendment specified in such application, and shall file the same with the Judge of Probate of the county in which the certificate of incorporation was originally filed. The proposed amendment shall be subscribed and acknowledged by each member of the Board of Directors before an officer authorized by the laws of Alabama to take acknowledgments to deeds. Such Judge of Probate shall thereupon examine the proposed amendment and, if he finds that the requirements of this section have been complied with and the proposed amendment is within the scope of what might be included in an original certificate of incorporation, he shall approve the amendment and record it in an appropriate book in his office. When such amendment has been so made, filed and approved, it shall thereupon become effective and the certificate of incorporation shall thereupon be amended to the extent provided in the amendment. No certificate of incorporation shall be amended except in the manner provided in this section.

"Section 7. The corporation shall have a board of directors in which all powers of the corporation shall be vested and which shall consist of any number of directors, not less than three, all of whom shall be duly qualified electors of and taxpayers in the municipality. The directors shall serve as such without compensation except that they shall be reimbursed for their actual expenses incurred in and about the performance

ance of their duties hereunder. No director shall be an officer or employee of the municipality. The directors shall be elected by the governing body of the municipality, and they shall be so elected that they shall hold office for staggered terms. At the time of the election of the first board of directors, the governing body of the municipality shall divide the directors into three groups containing as near equal whole numbers as may be possible. The first term of the directors included in the first group shall be two years, the first term of the directors included in the second group shall be four years, the first term of the directors included in the third group shall be six years, and thereafter the terms of all directors shall be six years; provided that, if at the expiration of any term of office of any director a successor thereto shall not have been elected, then the director whose term of office shall have expired shall continue to hold office until his successor shall be so elected. Any meeting held by the board of directors for any purpose whatsoever shall be open to the public.

"Section 8. The corporation shall have the following powers together with all powers incidental thereto or necessary for the performance of those hereinafter stated: (1) to have succession by its corporate name for the period specified in the certificate of incorporation unless sooner dissolved as hereinafter provided; (2) to sue and be sued and to prosecute and defend, at law or in equity, in any court having jurisdiction of the subject matter and of the parties; (3) to have and to use a corporate seal and to alter the same at pleasure; (4) to acquire, whether by purchase, construction, exchange, gift, lease or otherwise, to improve, maintain, equip, furnish, own and operate one or more projects, including all real and personal properties which the board of directors of the corporation may deem necessary in connection therewith and regardless of whether or not any such projects or any part thereof shall then be in existence; (5) to fix, prescribe and collect rates, fees, tolls, charges or rentals for the use of any of its facilities and for services, facilities and accommodations furnished by it or any of its facilities; (6) to adopt and enforce rules and regulations relative to the use or occupancy of any of its facilities or services; (7) to promote, sponsor and operate tournaments, shows, exhibitions, exhibits, athletic events, and educational, cultural, recreational, amusement and other activities; (8) to sell, exchange, and convey, to contract to sell, exchange and convey and to grant options to acquire any or all of its properties whenever its board of directors shall find any such action to be in furtherance of the purposes for which the corporation was organized; (9) to lease to others for a period not to exceed 40 years any or all of its projects or any part thereof, including public accommodation facilities and to charge and collect rent therefor and to terminate any such lease upon the failure of the lessee to comply with any of the obligations thereof; (10) to grant privileges, licenses, concessions or permits for the operation of any of its public accommodation facilities; (11) to lease land to others for a period of not to exceed 40 years, or to grant to others privileges, licenses or permits for the use of land for the construction and operation of public accommodation facilities and to authorize such lessee or grantee to mortgage their interest, rights and properties to finance the construction, enlargement and improvement of such public accommodation facilities; (12) to issue its bonds for the purpose of carrying out any of its powers; (13) as security for the payment of the principal of and interest on any bonds so issued and any agreements made in connection therewith, to mortgage and pledge any or all of its projects or any part or parts thereof, whether then owned or thereafter acquired, and to pledge the revenues and receipts therefrom or from any thereof; (14) to assume obligations secured by a lien on, or payable out of or secured by a pledge of, the revenues and receipts from any or all of its projects, or any part thereof that may be acquired, any obligation so assumed to be payable solely

out of the revenues and receipts from any or all of its projects, or part thereof; (15) to appoint, employ, contract with, and provide for the compensation of such officers, employees and agents, including but without limitation to engineers, attorneys, architects, construction contractors, management consultants, and fiscal advisers, as its business may require; (16) to provide for such insurance as the board of directors may deem advisable; (17) to cooperate with the United States of America, any agency or instrumentality thereof, the state, any person, or any combination of any of the foregoing; (18) to enter into a management agreement or agreements with any person for the management of any or all of its projects or part thereof; and (20) to accept gifts, grants, bequests and devises. Any project or projects of the corporation may be located within or without or partially within and partially without the municipality, subject to the following conditions: (a) no such project or part thereof shall be located more than thirty miles from the corporate limits of the municipality; (b) in no event shall any project or part thereof be located within the corporate limits of another city or town in this state; (c) no such project or part thereof shall be located within the police jurisdiction of another city or town in this state unless the governing body of such other city or town has first adopted a resolution consenting to the location of such project or part thereof in the police jurisdiction of such city or town; and (d) no such project or part thereof shall be located in a county other than that (or those) in which the municipality (or part thereof) is situated unless the court of county commissioners, board of revenue, or other governing body of such other county has first adopted a resolution consenting to the location of such project or part thereof in such county.

"Section 9. All bonds issued by the corporation shall be payable solely out of the revenues and receipts derived from the operation, leasing or sale by the corporation of its projects or of any thereof as may be designated in the proceedings of the board of directors under with (sic) the bonds shall be authorized to be issued. Such bonds may be executed and delivered by the corporation at any time and from time to time, may be in such form and denominations and of such tenor and maturities, may be in registered or bearer form either as to principal or interest or both, may be payable at such time or times not exceeding forty years from the date thereof, may be paable at such place or places whether within or without the State of Alabama, may bear interest at such rate or rates payable at such time or times and at such place or places and evidenced in such manner, may be executed by such officers of the corporation and in such manner and may contain such provisions not inconsistent herewith, all as shall be provided in the proceedings of the board of directors whereunder the bonds shall be authorized to be issued. If deemed advisable by the board of directors, there may be retained in the proceedings under which any bonds of the corporation are authorized to be issued an option to redeem all or any part thereof as may be specified in such proceedings, at such price or prices and after such notice or notices and on such terms and conditions as may be set forth in such proceedings and as may be briefly recited in the face of the bonds, but nothing herein contained shall be construed to confer on the corporation any right to redeem any bonds except as may be provided in the proceedings under which they shall be issued. Any bonds of the corporation may be sold at public or private sale in such manner and from time to time as may be determined by the board of directors of the corporation to be most advantageous, and the corporation may pay all expenses, premiums and commissions which its board of directors may deem necessary or advantageous in connection with the issuance thereof. Issuance by the corporation of one or more series of bonds for one or more purposes shall not preclude it from issuing other bonds in connection with the same project or any other project, but the proceedings whereunder any subsequent

bonds may be issued shall recognize and protect any prior pledge or mortgage made for any prior issue of bonds unless in the proceedings authorizing such prior issue the right was reserved to issue subsequent bonds on a parity with such prior issue. Any bonds of the corporation at any time outstanding may at any time and from time to time be refunded by the corporation by the issuance of its refunding bonds in such amount as the board of directors may deem necessary but not exceeding an amount sufficient to refund the principal of the bonds so to be refunded, together with any unpaid interest thereon and any premiums, commissions and expenses necessary to be paid in connection with such refunding. Any such refunding may be effected whether the bonds to be refunded shall have then matured or shall thereafter mature, either by sale of the refunding bonds and the application of the proceeds thereof for the payment of the bonds to be refunded thereby, or by the exchange of the refunding bonds for the bonds to be refunded thereby with the consent of the holders of the bonds so to be refunded, and regardless of whether or not the bonds to be refunded were issued in connection with the same projects or separate projects, and regardless of whether or not the bonds proposed to be refunded shall be payable on the same date or different dates or shall be due serially or otherwise. All such bonds and the interest coupons applicable thereto are hereby made and shall be construed to be negotiable instruments.

"Section 10. The principal of and interest on any bonds issued by the corporation shall be secured by a pledge of the revenues and receipts out of which the same shall be made payable, and may be secured by mortgage or deed of trust covering all or any part of the projects from which the revenues or receipts so pledged may be derived, including any enlargements of and additions to any such projects thereafter made. The resolution under which the bonds are authorized to be issued and any such mortgage or deed of trust may contain any agreements and provisions respecting the maintenance of the projects covered thereby, the fixing and collection of fees, rates, tolls and charges for the services, facilities and accommodations furnished by the corporation and of the rents for any portions thereof leased by the corporation to others, the creation and maintenance of special funds from such revenues and the rights and remedies available in the event of default, all as the board of directors shall deem advisable not in conflict with the provisions hereof. Each pledge, agreement, mortgage and deed of trust made for the benefit or security of any of the bonds of the corporation shall continue effective until the principal of and interest on the bonds for the benefit of which the same were made shall have been fully paid. In the event of default in such payment or in any agreements of the corporation made as a part of the contract under which the bonds were issued, whether contained in the proceedings authorizing the bonds or in any mortgage and deed of trust executed as security therefor, such payment or agreement may be enforced by mandamus, the appointment of a receiver in equity, or by foreclosure of any such mortgage and deed of trust, or any one or more of said remedies.

"Section 11. Upon the adoption by the board of directors of any resolution providing for the issuance of bonds, the corporation may, in its discretion, cause to be published once a week for two consecutive weeks, in a newspaper published in the municipality or if there is no newspaper published in the municipality, then in a newspaper published in the county in which the municipality is located, a notice in substantially the following form (the blanks being properly filled in) at the end of which shall be printed the name and title of either the chairman or secretary of the corporation: " ' ........................, a public corporation of the State of Alabama, on the ... day of ......., authorized the issuance of $..... principal amount of revenue bonds of the said corporation for

purposes authorized in the act of the Legislature of Alabama under which the said corporation was organized. Any action or proceeding questioning the validity of the said bonds, or the pledge and mortgage, or deed of trust to secure the same, or the proceedings authorizing the same, must be commenced within twenty days after the first publication of this notice.'

"Any action or proceeding in any court to set aside or question the proceedings for the issuance of the bonds referred to in said notice or to contest the validity of any such bonds, or the validity of the pledge and mortgage or deed of trust made therefor, must be commenced within twenty days after the first publication of such notice. After the expiration of the said period no right of action or defense questioning or attacking the validity of the said proceedings or of the said bonds, or the said pledge or mortgage or deed of trust shall be asserted, nor shall the validity of the said proceedings or of the said bonds, or the said pledge or mortgage or deed of trust, be open to question in any court on any ground whatsoever except in an action commenced within such period.

"Section 12. The corporation may, in addition to the other powers granted in this act, borrow money for temporary use for any of its corporate purposes and in evidence of such borrowing issue from time to time revenue bonds or notes maturing not later than eighteen months from the date of issuance. Any such temporary borrowing may be made in anticipation of the sale and issuance of long term bonds, and in such event the principal proceeds from the sale of such long term bonds shall, to the extent necessary, be used for payment of the principal of and the interest on the temporary bonds or notes issued in anticipation of the sale and issuance of such long term bonds. Any such temporary borrowing may also be made with respect to a project simultaneously with or after the sale and issuance of long-term bonds issued with respect to such project if, under the terms of the proceedings under which such long-term bonds are issued, the proceeds therefrom or any part thereof may not be used or released until completion of the project with respect to which issued or other similar contingency. In such case, the principal proceeds from the long-term bonds shall, when released and to the extent necessary, be applied for payment of the principal of and the interest on such temporary bonds or notes.

"Section 13. The corporation, the property and income of the corporation, all bonds issued by the corporation, the income from such bonds, conveyances by or to the corporation, and leases, mortgages, and deeds of trust by or to the corporation shall be exempt from all taxation in the State of Alabama. No license or excise tax may be imposed on any corporation in respect of the privilege of engaging in any of the activities authorized by this act.

"Section 14. The municipality shall not in any event be liable for the payment of the principal of or interest on any bonds of the corporation, or for the performance of any pledge, mortgage, obligation or agreement of any kind whatsoever which may be undertaken by the corporation, and none of the bonds of the corporation or any of its agreements or obligations shall be construed to constitute an indebtedness of the municipality within the meaning of any constitutional or statutory provision whatsoever.

"Section 15. The corporation shall be a non-profit corporation and no part of its net earnings remaining after payment of its expenses shall inure to the benefit of any individual, firm or corporation, except that in the event the board of directors of the corporation shall determine that sufficient provision has been made for the full payment of expenses, bonds and other obligations of the corporation, then any net earnings of the corporation thereafter accruing shall, at the option of the board of directors, be used to pay the cost of extensions and improvements to any of its projects or paid to the municipality with respect to which the corporation was organized.

"Section 16. Whenever the board of directors of the corporation shall by resolution determine that the purposes for which the corporation was formed have been substantially complied with and all bonds theretofore issued and all obligations theretofore incurred by the corporation have been fully paid, the then members of the board of directors of the corporation shall thereupon execute and file for record in the office of the Judge of Probate of the county in which the corporation is organized, a certificate of dissolution reciting such facts and declaring the corporation to be dissolved. Such certificate of dissolution shall be executed under the corporate seal of the corporation. Upon the filing of such certificate of dissolution the corporation shall stand dissolved, the title to all funds and properties owned by it at the time of such dissolution shall vest in the municipality, and possession of such funds and properties shall forthwith be delivered to such municipality.

"Section 17. The certificate of incorporation of the corporation or any amendment thereof, any deeds or other documents whereby properties are conveyed over to the corporation, any mortgages or deeds of trust or leases executed by the corporation, and the certificate of dissolution of the corporation may all be filed for record in the office of the Judge of Probate of the county in which the corporation is organized without the payment of any tax or fees other than such fees as may be authorized by law for recording of such instruments.

"Section 18. Neither this act nor anything herein contained shall be construed as a restriction or limitation upon any powers which the corporation might otherwise have under any laws of this state, but shall be construed as cumulative of any such powers. No proceedings, notice or approval shall be required for the organization of the corporation or the issuance of any bonds or any instrument as security therefor, except as is herein provided, any other law to the contract (sic) norwithstanding; provided, that nothing herein shall be construed to de-

prive the state and its governmental subdivisions of their respective police powers over any properties of the corporation, or to impair any power thereover of any official or agency of the state and its governmental subdivisions which may be otherwise provided by law.

"Section 19. If any section, clause, provision or portion of this act shall be held to be invalid or unconstitutional by any court of competent jurisdiction, such holding shall not affect any other section, clause or provision of this act which is not in and of itself unconstitutional."

In view of the length of House Bill No. 217 and the multitudinous details set out in the act, and in further consideration of the fact that we do not have the benefit of adversaries to point out their respective contentions, we feel that, in fairness to the House of Representatives, we ought to repeat here a part of what was said in 1923 in what appears to be the first advisory opinion given under the act providing for such opinions, now § 34, Title 13, et seq. The justices said:

"Interpreting the act according to its manifest effects, these conclusions must, of necessity, prevail: (a) That the act does not at all contemplate the advice or the advisory opinions of the Justices upon any matter relating to the wisdom, desirability, or policy of prospective legislative or executive action; (b) that the merely advisory opinions contemplated are those of the individual Justices, not of the Supreme Court of Alabama in its judicial capacity; (c) that specific inquiries, within the intent of the act, must involve or concern concrete, important constitutional questions upon matters or subjects of a general public nature, as distinguished from questions involved in the ascertainment or declaration of private right or interest; (d) and that responses to questions within the purview of the act are designed to be advisory, consultative only, not concluding or binding the Governor or the House or Houses pro-

703 Me. 486, 90 Atl.

pounding inquiries or the Justices responding thereto.

"The act avows its own object and purpose to be 'to give more confidence and assurance to the validity and constitutionality of important acts or contemplated acts of the Governor and the Legislature, and to declare the public policy of the state as to requesting and giving opinions of the Justices of the Supreme Court as' in the act provided. In aid of the public service contemplated the Justices are authorized to request briefs from the Attorney General and to receive briefs from attorneys intervening amicus curiae.

"Since the Legislature possesses the power to prescribe and to define the authority, duties, and functions of the Governor and the Justices (except as restrained by the Constitution), the act invests the Governor and the Houses with the authority to obtain the advisory opinions of the Justices or a majority of them —in respect of 'important constitutional questions,' propounded as the act contemplates—and imposes upon the Justices an obligation to consider such questions as emanate from the sources the act defines; but the determination of the inquiry, whether the question or questions so propounded are within the stated purview of the act, is an inquiry addressed to and determinable alone by the Justices exercising, each for himself, his judgment upon the inquiry whether the question or questions properly propounded are within the purview of the act. Such questions as are thus determined to be within the purview of the act should and will be accorded appropriate response by the Justice or Justices so concluding.

"The performance by the Justices of the function the act contemplates is non-judicial; this for the obvious reason that advisory opinions given do not conclude or vindicate any right or remedy, result in no judgment or decree, bind no one whatsoever. Laughlin v. Portland, 111 Me. 486, 90 Atl. 318, 15 L.R.A. (N.S.) 1143, Ann.Cas.1916C, 739; Opinion of Justices, 126 Mass. 557, 566." In re Opinions of the Justices, 209 Ala. 593, 594, 96 So. 487, 488–489.

The individual justices will undertake to consider the questions propounded in House Resolution No. 64 and to give such assistance as they may be authorized to give to the House of Representatives as follows:

*Questions (1) and (2)*

We are not persuaded that House Bill No. *217* contains more than one subject in violation of Section 45 of the Constitution.

The many details of the act appear to be germane and cognate to the general subject of the title. Atkinson v. City of Gadsden, 238 Ala. 556, 561, 192 So. 510.

On examination of the title and the body of the act, we have found nothing in the bill which cannot be referred to the subject expressed in the title. Kendrick v. Boyd, 255 Ala. 53, 55, 51 So.2d 694.

We therefore answer Question (1) in the negative and Question (2) in the affirmative.

*Question (3)*

Section 222, Constitution of 1901, does not apply to bonds that are payable solely out of the revenues from a new project to be constructed with the proceeds from those bonds. Rogers v. City of Mobile, 277 Ala. 261, 281, 169 So.2d 282.

Section 9 of House Bill No. 217 provides that "All bonds issued by the corporation shall be payable solely out of the revenues and receipts derived from the operation,

leasing or sale by the corporation of its projects" etc.

■ Section 14 of House Bill No. 217 recites that the municipality shall not in any event be liable for payment of principal or interest on any bonds of the corporation, or for performance of any pledge, mortgage, obligation, or agreement of any kind whatsoever which may be undertaken by the corporation. Moreover, as hereinafter noted, the corporation authorized by House Bill No. 217 is an entity distinct from the municipality.

We are of opinion that Question (3) should be answered in the negative.

### Question (4)

■ House Bill No. 217 does not provide that any municipality may become indebted in anywise whatever. The bill authorizes a corporation to become indebted, but, in Section 14, as already noted, it is provided that the city shall not in any event be liable for payment of any debt of the corporation. Any purchaser of any bond or other evidence of debt issued by the corporation is fully warned by the caveat of Section 14 that he cannot expect the city to pay even one cent of any debt of the corporation. See In re Opinion of the Justices, 256 Ala. 162, 53 So.2d 840.

Question (4) is answered in the negative.

### Questions (5) and (7)

House Bill No. 217 appears to be an adaptation of Act No. 648, approved September 19, 1949, Acts of Alabama 1949, page 991, which authorized the incorporation of nonprofit public corporations for the purpose of promoting industry, etc., as declared in that act. In House Bill No. 217, the intent is declared to authorize incorporation of similar corporations to promote sports, athletics, and recreational activities.

In Opinion of the Justices, 254 Ala. 506, 49 So.2d 175, the justices expressed opinion that Act No. 648 did not violate Section 93 of the Constitution. The justices said:

"It is clear that a corporation organized under Act No. 648 cannot be deemed to be embraced within the term 'the state' contained in the foregoing provisions of Section 93. The principle that a corporation organized under Act No. 648 being a separate entity cannot be considered identical with a municipality applies with even greater force to the state than to the municipality within which such a corporation may be organized. Act No. 648 authorizes no action whatever on the part of the state. There is no basis whatever for identifying a public corporation under the act with the State of Alabama." (254 Ala. at page 513, 49 So.2d at page 181)

■ For the reasons expressed in the last cited Opinion of the Justices, we are of opinion that a corporation organized under House Bill No. 217, is not embraced within the term, "the state," contained in Section 93 of the Constitution, and that House Bill No. 217 does not violate said Section 93.

Accordingly, Questions (5) and (7) are answered in the negative.

### Questions (6) and (8)

In the Opinion of the Justices, 254 Ala. 506, 49 So.2d 175, the justices also expressed opinion that Act No. 648 did not violate Section 94 of the Constitution. The justices said:

"We think it clear that Act No. 648 involves no expenditure of public money and the incurring of no liability that must or can be taken care of by taxation. Under the act a municipality is not authorized to spend public funds.

"*   *   *   *   *   *

"We do not think that a corporation organized under Act No. 648 is a subdivision of the state within the meaning of Section 94 of the Constitution. * *" (254 Ala. at pages 510, 512, 49 So.2d at page 180)

█ For the reasons stated in that opinion, we are of opinion that a corporation organized under House Bill No. 217, is not a subdivision of the state within the meaning of Section 94 of the Constitution.

Question (8) inquires whether the provisions of House Bill No. 217, authorizing acquisition, financing, ownership, leasing, or granting of permits or concessions with respect to so-called public accommodation facilities, as defined in the bill; violate Section 94 of the Constitution.

█ As we understand the bill, its provisions do not authorize a municipality to acquire, finance, own, lease or grant permits or concessions with respect to any facility whatever. The bill does authorize the corporation to do those things, but the municipality is not authorized to do so. Because the bill does not authorize the city to do the enumerated acts, we are of opinion that the bill does not violate Section 94 by authorizing the corporation to do those acts.

Questions (6) and (8) are answered in the negative.

Respectfully submitted,
J. ED LIVINGSTON,
Chief Justice,
ROBERT T. SIMPSON,
JOHN L. GOODWYN,
PELHAM J. MERRILL,
JAMES S. COLEMAN, JR.,
ROBERT B. HARWOOD,
Justices.